People of the State of Illinois ex rel. Oscar Nelson, Appellee, v. Phillip State Bank and Trust Company et al. United States Fidelity and Guaranty Company, Appellant.

Gen. No. 41,268.

Opinion filed December 23, 1940.

Eugene P. Kealy, of Chicago, for appellant.

Markman, Donovan & Sullivan, of Chicago, for appellees; Henry O. Nickel, of Chicago, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

December 9, 1931, the County Treasurer of Cook County deposited $100,000 with the Phillip State Bank & Trust Company and the bank, as security for the deposit, delivered to the County Treasurer securities of a par value of $108,000, which were afterward turned over by the County Treasurer to the First National Bank of Chicago. March 20, 1932, the County Treasurer deposited another $100,000 in the Phillip State Bank and to secure this deposit, the bank gave to the County Treasurer additional collateral of the par value of $190,000, which was afterward turned over by the County Treasurer to the Central Republic Bank and Trust Company. June 21, 1932, the bank was taken over by the Auditor of Public Accounts and is being liquidated. A receiver was appointed by the Auditor and the appointment confirmed by the court. During the process of liquidation the First National Bank collected some of the securities deposited with it by the County Treasurer and paid the proceeds thereof, $22,525, to the County Treasurer. November 25, 1930, the United States Fidelity and Guaranty Company, as surety, executed the bond of the County Treasurer, as required by law. About November 3, 1939, the surety company paid to the County Treasurer, $177,475, being the balance of the $200,000 deposited in the Phillip State Bank. Thereafter, the County Treasurer assigned his interest to his claim against the bank to the surety company and in this proceeding it claims a preferential claim for $177,475.

The master to whom the cause was referred found the evidence failed to show the deposits of $200,000 were undistributed tax moneys, recommended that the right to the preferential payment be denied and the claim allowed as a general claim. Afterward, the surety company filed its intervening petition claiming

it was entitled to a preferred claim on the ground that by its payment to the County Treasurer of the balance of the $200,000 deposits ($177,475) and by the assignment of the County Treasurer's claim to it, it was subrogated to the rights of the County Treasurer. The chancellor found against the contention and followed the recommendation of the master, allowing the surety company a general claim against the assets of the bank. The surety company appeals and the receiver of the bank prosecutes a cross-appeal contending that the court should have directed the receiver to withhold any dividends from the County Treasurer until such dividends amounted to $22,525.

Considerable evidence was introduced before the master as to the method in which the County Treasurer received the moneys and the two deposits made by him in the Phillip State Bank, all the evidence being directed to the point that the $200,000 on deposit in the Phillip State Bank was or was not undistributed tax moneys. Under the law, if the moneys were undistributed tax moneys the County Treasurer's claim, if he were asserting it here, should be paid in preference to the general creditors of the bank. The rule of law and the reasons upon which it is based were stated by this court in *People ex rel. Nelson v. Chicago Lawn State Bank,* 306 Ill. App. 107, and will not be repeated here. But in the view we take of the case, the question whether the $200,000 on deposit in the Phillip State Bank was or was not undistributed tax moneys is not controlling because we hold that the right of preference of the sovereign over other depositors did not pass to the surety except to the extent that the surety is subrogated to the rights of the County Treasurer as a depositor of the bank and its claim was allowed as such. In *South Philadelphia State Bank's Insolvency,* 295 Pa. 433 (145 Atl. Rep. 520), it was held that priority is the exclusive right of the sovereign state, for the reason that the affairs

of government must be continued. This reason does not exist in the case of an individual. In that case in a very able opinion and an exhaustive review of the authorities, Mr. Chief Justice MOSCHZISKER in delivering the unanimous opinion of the court held, in the absence of a statute, that the right to preference over other depositors did not pass to a surety desiring subrogation to the preferential right of the state upon making good the deposit in accordance with its bond. The court said: ''the sureties, who met the obligations of the king's debtors, had only the rights of common creditors,'' and ''Though the State of Pennsylvania has a sovereign right of priority over all other creditors, it by no means follows that, on the facts in this case, such right would pass to one in the position of appellant. It must be remembered that appellant, a surety obtained and paid by the insolvent bank, not by the Commonwealth, claims the right to enjoy the sovereign privileges of the latter, and this under the equitable doctrine of subrogation; the right claimed is to a preference over all other depositors of the bank. Since the right of priority of the sovereign state exists pro bono populo, it follows that where a situation arises in which the State, having been paid in full, is not immediately concerned, and where the transfer of its right of priority would result in prejudice to one class of its citizens for the benefit of another, it cannot be held that the good of all the people would thus be served.'' In 60 C. J., pp. 696–699, it is said: ''Subrogation does not owe its origin to a statute or custom nor is it a doctrine of the common law. It originated in equity and is a creature of equity, a doctrine of equity jurisprudence which was adapted by equity from the Roman or the civil law. . . .

''The object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, . . . and rests upon the principle that substantial justice should be attained regardless of form.''

Bouvier says: "In this country, under the initial guidance of Chancellor Kent, its principles have been more widely developed than in England. . . . It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form. . . . It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter."

In the instant case the surety's contracts required it to make good any loss sustained by the County Treasurer on account of the two deposits in the Phillip State Bank. The surety has met this obligation by making payments, and having carried out its written contracts for which it was paid, it would be highly inequitable to permit the surety's claim to be paid in full out of the assets of the bank and the other depositors receive little or nothing.

As to the receiver's cross-appeal.

Counsel for the receiver say the County Treasurer, having filed an intervening petition in the liquidation proceeding "for a determination of whether or not moneys deposited with the Phillip State Bank and Trust Company were undistributed tax moneys, is required to do equity, and it having been established that $22,525 of the general assets of the Phillip State Bank and Trust Company were illegally paid to the County Treasurer in fraud of the rights of the other creditors, a court of equity has the power to direct the Receiver . . . to withhold dividends from the County Treasurer, . . . until the . . . $22,525 has been restored, and that, thereafter, all dividends accruing may then be paid to the County Treasurer or his assignee." The basis of this contention is that the evidence shows that a few days after the Phillip State Bank closed, the First National Bank of Chicago paid to the County Treasurer $22,525, being the proceeds of collateral

which had been deposited by the Phillip State Bank with the First National Bank to secure the deposit of the County Treasurer, as above stated, and it is argued the pledging of these assets was *ultra vires,* null and void and *People v. Wiersema State Bank,* 361 Ill. 75, is cited. On the other side, counsel for the surety company says this claim of the receiver "seems to have originated for the first time in the objections filed . . . to the Master's Report on July 14, 1939;" that in the original answer filed by the receiver in 1937 to the intervening petition of the County Treasurer, who was seeking to have his deposits held to be a preferred claim on the ground that they were undistributed tax moneys, no mention was made of this claim of $22,525 and no such claim was made before the master. Counsel further says the matter was adjudicated in a suit brought by the receiver against the First National Bank, the Central Republic Trust Company, and the County Treasurer in the Superior Court of Cook County in 1932, in which suit the receiver sought to recover the collateral pledged to secure the deposits made in the Phillip State Bank, and that before the institution of the suit by the receiver, and before any demand was made by the County Treasurer on the First National Bank for return of the collateral, the First National Bank had paid to the County Treasurer the $22,525 which it had collected from the securities deposited. It is further said that in the Superior Court the receiver asked for and obtained an order to dismiss that suit in consideration of the delivery of all cash and securities to him by the First National and the other bank, and that order which is in the record before us specifically mentions the payment of the $22,525. The order provided further that upon the return of the securities to the receiver, no further claim would be made against the First National Bank of Chicago, all claims having been released by the receiver.

It further appears that afterward the requirements of that order were met by the First National Bank and the securities returned.

In view of the state of the record, we think the decree of the Superior Court of Cook County ought to be, and it is affirmed.

*Decree affirmed.*

MATCHETT and MCSURELY, JJ., concur.