John M. Smith, Treasurer of State of Wisconsin et al., Appellant, v. Clavey Ravinia Nurseries Incorporated, Appellee.

Gen. No. 10,086.

Opinion
filed November 4, 1946. Released for publication December 10, 1946.

BERNARD M. DECKER, of Waukegan, and ROBERT P. SULLIVAN, of Chicago, for appellant; BERNARD M. DECKER, of Waukegan, of counsel.

GEORGE S. McGAUGHEY, of Waukegan, for appellee; OWEN RALL, of Chicago, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court of Lake county in favor of the defendant, Clavey Ravinia Nurseries Incorporated, a corporation, upon its motion to strike the complaint of the plaintiff, John M. Smith, treasurer of the State of Wisconsin, and ex-officio custodian of the Mutual Workmen's Compensation Security Fund of the State of Wisconsin.

The uncontroverted facts appearing from the record are that on January 25, 1937, an employee of the defendant, an Illinois corporation doing business in Wisconsin, suffered a compensable injury arising out of and in the course of his employment in Wisconsin. Defendant's compensation liability was then insured by the Builders and Manufacturers Mutual Casualty Company, hereinafter referred to as the Mutual Co., which had paid the sum of $881.39 into the Mutual Workmen's Compensation Security Fund of Wisconsin, referred to hereafter as the Security Fund, pursuant to the requirements set forth in subsec. 5 (b) of sec. 102.65 of ch. 102 of the Laws of Wisconsin (1945).

On June 5, 1937, the Mutual Company's assets and liabilities were assumed by the Builders and Manufacturers Casualty Co., which, in turn, became insolvent the following April of 1938. The stock company, however, was not licensed to do business in the State of Wisconsin and made no payments into the Security

Fund, but inasmuch as it assumed the liabilities and assets of the Mutual Company, its position for the purpose of determination of the issues in the instant case will be considered substantially the same as that of the Mutual Company.

Awards were entered by the industrial commission in favor of the employee and against the defendant and the insolvent stock company on August 19, 1938, Sept. 18, 1939 and again on Sept. 7, 1941. Each of these awards remained unpaid for 60 days and more, whereupon the plaintiff, as custodian of the Security Fund paid the awards in compliance with the statutory mandate under subsec. 11 of sec. 102.65 of the Wisconsin Workmen's Compensation Act, which provision will be considered in detail hereinafter.

In this proceeding the plaintiff, as custodian of the fund, is seeking reimbursement from the defendant employer for compensation payments amounting to $2,023.17 made from the fund to defendant's employee.

Two theories of recovery are advanced in plaintiff's second amended complaint: First, that he is entitled to reimbursement under the common-law doctrine of subrogation, whereby plaintiff seeks to be subrogated to the rights of defendant's employee whose compensation award was paid from the fund; and secondly, that he is entitled to be reimbursed under the statutory right of subrogation created by subsec. 11 of the aforementioned sec. 102.65 of the Wisconsin statutes, which authorizes the custodian to institute proceedings against the insolvent carrier, the employer and all others liable, to recover sums paid out of the fund by reason of the liability of the insolvent carrier.

The trial court dismissed plaintiff's second amended complaint on the ground that it did not state a cause of action, and thereupon entered judgment in favor of defendant, from which judgment plaintiff has appealed.

The sole issue presented on this appeal is a question of law—whether this complaint states a cause of action—a legal theory upon which recovery may be predicated.

It is apparent that this is a case of first impression in this State, and so far as we have been able to determine, in the nation, and involves the extension of the doctrine of subrogation to a novel situation arising under the Wisconsin Workmen's Compensation Act. The mere fact, however, that the doctrine has not been invoked in this situation heretofore, is not a prima facie bar to its applicability in this proceeding, for the calcification of legal concepts, an inherent tendency of the common-law system, must be guarded against if our legal system is to cope with contemporary problems.

From the pronouncements of leading jurists and encyclopedists, it is evident that the doctrine of subrogation has been steadily expanding and is a favorite of the law. 50 Am. Jur., 685, 686; 60 Corpus Juris, 700–706.

Founded on the general and vague concepts of justice and good conscience, subrogation has been nurtured and encouraged, and is no longer restricted to cases of contract and suretyship.

In 50 Am. Jur. 686, it is stated: "As now applied, it (subrogation) is broad enough to include every instance in which one person not acting as a mere volunteer or intruder pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."

In 60 Corpus Juris 706, and the cases cited in support thereof, it is further stated: "It (subrogation) is no longer confined to cases of suretyship, but the doctrine has been steadily growing and expanding in importance and becoming more general in its application to various subjects and classes of persons, the principle

being modified to meet the circumstances of cases as they arise."

This interpretation of the scope of the doctrine has been adopted by the Illinois courts, and the foregoing excerpt from Corpus Juris was quoted by the court in *People ex rel. Nelson v. Phillip State Bank & Trust Co.,* 307 Ill. App. 464, 467. Moreover, in the recent case of *Cherry v. Aetna Casualty & Surety Co.,* 372 Ill. 534, the Illinois Supreme Court stated with reference to the doctrine of subrogation, "Subrogation is not simply a matter of contract but is one of equitable right."

With this general statement of the doctrine of subrogation as a guide, it is incumbent upon this court to determine whether the state treasurer, as custodian of the Wisconsin Security Fund, is entitled to invoke the doctrine to secure reimbursement from the defendant employer for monies paid out of the fund, pursuant to the statute, to defendant's employee.

The law is settled under both the Wisconsin and Illinois Workmen's Compensation Acts that the employer and the insurance carrier are directly liable for the payment of workmen's compensation to employees.

In *Thomas v. Industrial Commission,* 10 N. W. (2d) 206, 208, 243 Wis. 231, the court quoted with approval the decision in *Independence Indemnity Co. v. Industrial Commission,* 209 Wis. 109, 244 N. W. 566, and stated with reference thereto:

"It was further held that liability of the employer to the employee is the primary liability, although proceedings against either the employer or the insurance carrier may be had . . . ."

In the Illinois case of *Equitable Casualty Underwriters v. Industrial Commission,* 322 Ill. 462, it was held that the employee could have proceeded to collect the awards either from the employer or the employer's insurance carrier, or both.

■ It is also established that where the insurance carrier is insolvent, the employer will be held liable to the employee for the full amount of compensation. *Stephens Engineering Co. v. Industrial Commission,* 290 Ill. 88; *Dyer v. Industrial Commission,* 364 Ill. 161.

■ In the instant case, although defendant had a primary duty to pay the compensation to its employee, neither defendant nor its compensation carrier made such payment. Instead, the awards remained unpaid for more than 60 days after they were entered, whereupon it became the duty of the plaintiff, as custodian of the Security Fund, to pay the employee under the mandate of sec. 102.65 of the Wisconsin Workmen's Compensation Act.

■ This section provides in substance for the creation of a fund for the purpose of assuring payments to persons entitled to compensation, whose employments were insured in insolvent carriers. This fund is administered by the commissioner of insurance and the industrial commission, and is comprised of contributions required from all mutual carriers in the amount of one per cent of their annual earned premium.

Where an award for compensation remains unpaid for 60 days by reason of the default of an insolvent carrier, the industrial commission is required to certify to the commissioner of insurance the amount payable, and the latter must file certification of the payments to be made with the state treasurer, who then is obliged to pay the amount due from the fund.

The statute further provides, that "the State Treasurer, as Custodian of the funds shall proceed to recover the sum of all liabilities of such carrier, its receiver, rehabilitator, or trustee in bankruptcy, employer, and all others liable, and may prosecute an action or proceedings therefor. All monies recovered in such proceeding shall be replaced in the Fund to reimburse it to the extent of the monies recovered."

In the instant case, it is readily admitted that plaintiff, as custodian of the fund, paid the award in compliance with all the conditions set forth in the statute: An employee of the defendant sustained a compensable injury in the course of operations in Wisconsin; at the date of such injury the employer was insured by a mutual carrier which had paid its required contribution of one per cent of its earned premiums into the fund; this carrier, and its successor became insolvent; the award remained unpaid for more than 60 days by reason of the default of the insolvent carrier; the award was certified with the commissioner of insurance, who, in turn, filed certification thereof with the plaintiff, and it then became his duty under the statute to pay the said award from the Security Fund.

It would appear, therefore, that this case presents prima facie a situation involving all the essential factors for the application of the equitable doctrine of subrogation, for the plaintiff, acting under the compulsion of the Wisconsin Workmen's Act, and not as a volunteer, paid a debt for which the defendant and its insolvent carrier were primarily liable.

Defendant, however, in denying any liability to reimburse the fund under any theory of subrogation advances the following argument, which apparently had the approval of the trial court according to the opinion filed in the record.

Defendant contends that the insurance carrier covering its compensation liability at the date of the accident paid the required contribution into the Security Fund, and that the amount of such contribution was passed on as increased premium charges to the defendant company, wherefore, defendant insists, since it was required to contribute indirectly to the fund, it should not now be called upon to reimburse the same fund.

The tenuous nature of this argument is apparent from a closer examination of the facts and an analysis of the purport of the statutory provisions in question.

The defendant, as an employer doing business in Wisconsin, insured its compensation liability as it was required to do under the Wisconsin Workmen's Compensation Act, in a duly licensed insurance carrier, and paid the carrier a premium measured by the nature of the risk assumed. The carrier was required under subsec. 5 (b) of sec. 102.65, to pay into the Security Fund one per cent of its earned premiums, and for the year during which defendant's employee sustained the accidental injury, the carrier reported earned premiums in the amount of $88,130.80, and, therefore, remitted into the Security Fund the sum of $881.39, representing one per cent thereof.

If the carrier did pass on this expense among its numerous policyholders by adding to the premiums charged to each employer, it is obvious that the amount added to each individual premium would be but a fractional sum over and above the regular premium charges, inasmuch as the total contribution paid by the carrier was only one per cent of its earned premiums. It should be noted, moreover, that there is no allegation in the pleadings that the carrier did pass on this expense, or that any specific additional sum was charged to defendant for the Security Fund, or that such practice was authorized or envisaged by the statute.

Nevertheless, defendant contends that the indefinite and conjectured fractional sum, which it may or may not have paid through its premiums, should relieve it of its entire compensation liability, which in turn should be borne by the Security Fund.

Not only would this interpretation constitute an unjust enrichment of the defendant, and lead to the rapid depletion of the fund, inasmuch as employers

by delaying payments of compensation for 60 days could avoid all liability where the carrier was insolvent, but it is clearly in contravention of the stated purpose and plain words of the statute.

Subsec. 4 of sec. 102.65 sets forth the sole purpose for the creation of this Security Fund, and provides that the fund is created "for the purpose of assuring persons entitled thereto, the benefits provided by this Chapter (Workmen's Compensation Act) for employments insured in insolvent carriers."

The persons entitled to the benefits under the Act are the injured employee or, in case of death, his dependents, and it is to assure this group the prompt payment of claims where their employments are insured in insolvent companies that this fund is created.

No other purpose is stated in the statute, nor is any other purpose intended. The gratuitous assumption by defendant that the fund is designed to relieve the carrier or the employer, both of which are primarily liable for the payment of compensation, from liability where the carrier becomes insolvent, is in direct contradiction to the provision authorizing the state treasurer to institute proceedings to recover from the carrier and employer, and others liable, the amount paid out of the fund by reason of the carrier's default. Obviously, that provision does not indicate a legislative intent to reinsure the carrier, or to substitute the fund in lieu of the employers' liability to his employee; on the contrary, it is solely designed to protect the fund from depletion in the interest of those for whom the fund is established. Had the employer in the instant case promptly paid its obligation under the award, it could not be seriously contended that it could seek indemnification from this emergency fund. Why, then, should it be relieved from making such payment merely by reason of its

own meretricious delay and categorical denial of its statutory liability.

.It is the considered judgment of this court that under the Wisconsin Workmen's Compensation Act, the defendant employer had a primary duty to pay compensation to its employee; that the insurance carrier was liable to the same extent; that when the carrier became insolvent the defendant nevertheless remained liable, and that such liability was neither eliminated nor modified by the establishment of the Wisconsin Security Fund. When, therefore, plaintiff, as custodian of the Security Fund paid the amount of the awards under statutory compulsion, and thereby discharged defendant's primary liability and obligation to its employee, plaintiff thereupon became entitled to be subrogated to the rights of the said employee and should properly be reimbursed by the defendant to the extent of the payments made.

We cannot agree with the statement of the trial court that the common-law doctrine of subrogation does not apply, for clearly under the prevailing interpretation of the scope of the doctrine of subrogation, where the plaintiff paid, under compulsion, the obligation for which defendant and its carrier were primarily liable, this equitable and favored concept of the law should be applied. For in good conscience the defendant employer should not be permitted to avoid and pass on its compensation liability merely because the State legislature of Wisconsin set up for the benefit of those entitled to compensation an emergency fund to provide for prompt payment where the employments were insured by insolvent carriers.

Therefore, the allegations of plaintiff's second amended complaint, which predicate recovery on the theory of the common-law doctrine of subrogation did set forth a good cause of action, and the complaint should not have been dismissed on that ground by the trial court.

There is another and equally compelling reason for holding the complaint sufficient as a matter of law. Plaintiff's second theory of recovery, stated in the complaint, is predicated upon the statutory right of subrogation created by the provisions of subsec. 11, sec. 102.65. Under the unambiguous wording of this section, previously referred to in our analysis of the legislative purpose of the fund, it is provided that:

"The State Treasurer as custodian of the funds shall proceed to recover the sum of all liabilities of such carrier assumed by such funds from such carrier, its receiver, liquidator, rehabilitator, or trustee in bankruptcy, *employers,* and all others liable, and may prosecute an action or proceeding therefor. All monies recovered in any such action or proceeding shall forthwith be placed to the credit of the proper fund by the State Treasurer to reimburse said fund to the extent of the monies so recovered and paid."

This section unequivocally creates a statutory right of subrogation, which cannot be extinguished by judicial construction. This court cannot find within this provision, or any interpretation thereof, any basis for the conclusion of the trial court that this section, by authorizing the state treasurer to seek reimbursement from the insolvent carrier, deprives the employer of the right to proceed against such carrier, or its receiver, for reimbursement of any sums it has been required to pay out as compensation. Not only does that construction of the provision make a gratuitous addition to the statute, *i. e.,* that it deprives the employer of his right to proceed against the carrier, but it fails to take cognizance of the fact that the only time the employer would be entitled to claim reimbursement from the insolvent carrier would be when it paid a compensation award to an employee, and under those circumstances the state treasurer would not be authorized under the statute to pay the award,

hence the treasurer would have no occasion to seek reimbursement from anyone.

It is apparent, therefore, that the rights of the employer and the treasurer to proceed against the carrier are not in conflict, and by giving effect to the plain words of the statute no one is being deprived of any rights previously enjoyed.

It is submitted, finally, that under the full faith and credit clause of article IV of the Constitution of the United States, this court is required to give effect to the public acts of a sister State. There is nothing in the provision of the Wisconsin Compensation Act authorizing the state treasurer, as custodian of the Security Fund, to seek reimbursement from an employer doing business in Wisconsin for a compensation award paid out by the State Fund, that is repugnant to the laws of this State, and, therefore that law should and will be applied by this court.

On the basis of the foregoing conclusions it is the opinion of the court that the allegations of plaintiff's second amended complaint, which predicated liability on the statutory right of subrogation, stated a cause of action, and constituted a second legally sufficient theory upon which recovery could be allowed. In striking this second amended complaint on the ground that it did not state a cause of action, the trial court was in error, and the judgment entered thereupon in favor of the defendant must, therefore, be reversed and remanded to the lower court with directions to overrule the motion to strike the complaint.

*Judgment reversed and remanded with directions.*