Joseph R. Dworak, for Use of Allstate Insurance Company, Plaintiff-Appellant, v. Maurice Tempel, Doing Business as Tempel's Tavern, Defendant-Appellee.

Gen. No. 10,147.

Third District.

May 21, 1958.

Rehearing denied and opinion modified August 5, 1958.

Released for publication August 5, 1958.

Richard J. Watson, of Champaign, for appellant.

French L. Fraker, Dobbins & Fraker, of Champaign, and Charles G. Briggle, Jr., of Springfield, for appellee.

PRESIDING JUSTICE ROETH delivered the opinion of the court.

This is an action by the plaintiff, Joseph R. Dworak, the owner and operator of a certain Ford automobile, for the use of Allstate Insurance Company, his collision insurance carrier under a $50 deductible automobile collision insurance policy issued by it to Dworak insuring him against loss by collision, over and above the $50 deductible, against Maurice Tempel, doing business as Tempel's Tavern, defendant, a person engaged in the business of selling alcoholic liquor, and George B. McClellan, defendant, the owner and operator of a certain Pontiac automobile, to whom Tempel had sold or given alcoholic liquor which caused the intoxication of McClellan. The plaintiff seeks to recover $495.32 bound to be paid and paid by Allstate Insurance Company under its insurance policy to its insured, Dworak, for a loss sustained by collision to Dworak's automobile when it and McClellan's automobile collided December 2, 1955 in Champaign, Illinois. McClellan's intoxication is as-

serted to be the sole, proximate cause of the collision. The total loss by collision to Dworak's automobile was $545.32. The defendant, George B. McClellan, was not served with summons. This action was originally begun in a Justice of the Peace Court, where a judgment was entered for the defendants, from which the plaintiff appealed to the Circuit Court. The facts were stipulated at the trial in the Circuit Court.

From the stipulation it appears that Allstate Insurance Company issued to its insured, Joseph R. Dworak, a certain $50 deductible automobile collision insurance policy insuring him against loss to his Ford automobile by collision, over and above the $50 deductible.

On December 2, 1955 Joseph R. Dworak was driving his Ford easterly at a certain point on a certain street in Champaign at a certain time. At the same time and place George B. McClellan was driving his Pontiac automobile westerly on that street. McClellan's automobile struck and collided with Dworak's automobile in the eastbound lane of travel, Dworak having pulled to the curb and stopped.

*Previously McClellan had consumed intoxicating liquor sold or given him by Maurice Tempel, doing business as Tempel's Tavern, and was intoxicated. His intoxication was the sole and proximate cause of the collision.* Dworak's car suffered $545.32 collision loss or damage, and Allstate Insurance Company was bound to pay and did pay Dworak, the insured, $495.32 thereof.

It is important to note that the suit was commenced in the Justice of the Peace Court on *August 1, 1956.* The case was appealed to the Circuit Court and the stipulation was entered into on April 24, 1957. On April 26, 1957 the Circuit Court granted defendant's motion for judgment and this appeal followed.

227

It is the theory of the plaintiff that a collision insurance carrier has the right to be subrogated to the rights of its insured against a dramshop under the then existing Illinois law, and that the Trial Court committed reversible error in granting the motion of the defendant and entering judgment in his favor.

Counsel for both parties concede that the question involved in this case is new in Illinois. The first and foremost contention of defendant is that Allstate Insurance Company, the collision carrier for Joseph R. Dworak, or Joseph R. Dworak for the use of Allstate Insurance Company, is not an "other person" within the meaning of the Dramshop Act. In support of this contention counsel for defendant cites Economy Auto Ins. Co. v. Brown, 334 Ill. App. 579, 79 N.E.2d 854; New Amsterdam Casualty Co. v. Gerin, 9 Ill.App.2d 545, 133 N.E.2d 723; and Eager v. Nathan, 14 Ill.App.2d 418, 144 N.E.2d 629. These cases were decided under the act then in force, Ill. Rev. Stat. 1953, Chap. 43, Section 135, which provided in part as follows:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; . . . ."

While it is true that there is language in these cases that an insurance company generally, is not within the classification of the phrase "other person," the reason as set forth in New Amsterdam Casualty Co. v. Gerin, supra, is important. There the court observed:

"There is a good basis in the principles of legislative construction for the conclusion of the Economy case. The act states that 'every husband, wife, child,

parent, guardian, employer or other person, who shall be injured in person or property, . . . shall have a right of action. . . .' Ill. Rev. Stat. 1953, Chap. 43, Section 135. The act itself and the cases decided on the point indicate that since it is remedial the act should be given a liberal construction. Ill. Rev. Stat. 1953, Chap. 43, Section 94; Economy Auto Ins. Co. vs. Brown, 334 Ill. App. 579, 583. But even under a liberal construction we cannot construe the act beyond the intent of the legislature. The well known principle of construction, ejusdem generis, precludes extension of the term 'other person' beyond the classes specifically enumerated. To be included, therefore, within the term 'other person' the injured party must be of the same general classification as a 'husband, wife, child, guardian or employer.' There is no indication that the legislature intended 'other person' to include an insurance carrier."

Thus, as counsel for plaintiff concedes, if this logic is carried to its ultimate conclusion, if an intoxicated person, as a result of his intoxication were to run his automobile through a plate glass window of a building owned by Allstate Insurance Company no cause of action would exist against the dramshop, under the Dramshop Act as it existed prior to the 1955 amendment, since the corporation is not an "other person" within the foregoing analysis.

This case, however, contains the very pertinent observation, as follows:

"The Economy case was decided in 1948 and if this decision did not truly interpret the legislative intent, ample time has intervened during which the legislature could have clarified its intention by amendment."

Following these decisions the Legislature in 1955 amended Sec. 135 of the Dramshop Act. It now provides:

"Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; . . ."

■ Thus it will be observed that the Legislature has eliminated the enumeration of specific classes of persons. When the Legislature revises a statute it must be presumed that the Legislature took cognizance of the prior decisions of the courts construing and interpreting the prior law. If, after a statute has been construed and interpreted, the Legislature makes radical changes in phraseology, an intention is thereby shown to establish a rule different from that announced by the courts. Where by amendment or revision, words are stricken from a statute it must be concluded that the Legislature deliberately intended to change the law. I. L. P. Statutes Par. 161; McLaughlin v. People, 403 Ill. 493, 87 N.E.2d 637; Towers v. Schull, 3 Ill.App.2d 358, 122 N.E.2d 62. We are therefore of the opinion that by the elimination of the enumeration of the specific classes of persons, the Legislature has evinced an intention to broaden the classification of an injured party.

By Ill. Rev. Stat. 1957, Chap. 131, Sec. 1, it is provided

"In the construction of statutes the provisions of Sections 1.01 to 1.22, inclusive, shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute."

and by Section 1.05, it is provided

" 'Person' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals."

We are of the opinion that since this action was commenced after the effective date of the 1955 amendment, that act applies, and that the prior holdings of the courts in the cases hereinbefore referred to no longer preclude an insurance company from asserting any rights it may have against a dramshop.

Aside from the foregoing, there is a basis, apparently overlooked by the foregoing decisions, for holding that even under the prior law an insurance carrier would not be precluded from asserting *its insured's right of action* under the subrogation doctrine, against the dramshop as will be hereinafter discussed.

■■ In certain types of insurance there is present the concept of indemnity. Where this feature is present, the insurer who has been required by contract to indemnify the insured for the actual loss suffered, is entitled to be subrogated to the legal rights belonging to the insured at the time of loss against the tort feasor. This rule finds application in property insurance, i. e., fire or marine insurance or burglary and theft and property damage automobile insurance. Where the indemnity feature is not present i. e., life or accident insurance, the subrogation feature has no application. 46 C. J. S. Sec. 1209, page 152. This right of subrogation exists by operation of law albeit that it is a well known fact that automobile insurance policies contain express provisions for subrogation. The doctrine of subrogation originated in equity, but is presently an integral part of the common law and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the

231

rights of the injured person against such wrongdoer. Geneva Const. Co. v. Martin Transfer & Storage Co., 4 Ill.2d 273, 122 N.E.2d 540.

One of the basic principles of subrogation is that the subrogee does not exercise the means and remedies of redress in its own right. It only exercises them as successor to the legal rights of the subrogor. The subrogee steps into and stands in, the shoes of the subrogor. The position of Allstate Insurance Co. in the plate glass window illustration is different from its position in the case at bar. In the former instance it would seek to exercise a remedy *in its own right* while here it seeks to exercise a remedy as successor to its insured. Under the principles of subrogation, if the subrogor cannot exercise any means and remedies of redress, the subrogee cannot. If the subrogor cannot recover the subrogee is likewise precluded. Thus in arriving at the true position of the subrogee, it is necessary to determine whether the subrogor has a remedy against the dramshop and whether he is a proper person to exercise that remedy in his own right. If he does, we think it would legally follow that his rights may be exercised by his subrogee. In the case at bar the intoxicated person is the tort feasor causing the loss. The dramshop is made a tort feasor by the Dramshop Act under certain conditions. The insured is without fault. The property involved is the automobile of the insured. It is conceded that Dworak would have had a cause of action against McClellan. It is not disputed that Dworak would also have had a cause of action against the dramshop and that he would have been a proper person to assert that cause of action even under the Dramshop Act as it existed prior to the 1955 amendment. We are of the opinion that Dworak's rights may be exercised by his subrogee, and to so permit, places the ultimate responsibility where it belongs and

reimburses the innocent party, i. e., the subrogee for the loss it has paid.

It is contended that Economy Auto Ins. Co. v. Brown, New Amsterdam Casualty Co. v. Gerin and Eager v. Nathan, supra, show a definite trend on the part of the courts to regard the contention of the plaintiff with disfavor.

Economy Auto Ins. Co. v. Brown, supra, was a suit for damages under the Dramshop Act by Economy Auto Insurance Company to recover sums paid by it in settlement of liability claims against its assured, Thomas Roach, who had injured divers persons while driving his car (insured with Economy) in an intoxicated condition caused by alcoholic beverages purchased from the defendants Brown, et al., tavern operators. The court held that the action could not be maintained.

In the course of its opinion the court recognized the general principles of subrogation in that one who has indemnified another is entitled to the means and remedies of redress held by the party indemnified, and that the right exercised by the insurer is exercised as successor to the remedies of the person indemnified rather than in its own right. In the course of the opinion it was observed

"Plaintiff, as insurer of Roach, would be entitled to such remedies as he (Roach) could properly assert, and inasmuch as he was the intoxicated tortfeasor he acquired no rights either against the dram shop keepers or the persons with whom he collided."

New Amsterdam Casualty Co. et al. v. Gerin et al., supra, was a suit under the Dramshop Act by New Amsterdam Casualty Company and Norwood Hotel Corporation for the use of New Amsterdam,—New Amsterdam being the public liability insurance carrier for the hotel,—against certain defendant tavern operators who had given or sold alcoholic liquor to

233

another defendant Gerin, causing his intoxication, to recover moneys paid by New Amsterdam in settlement of certain claims and suits by guests of the hotel against the hotel arising from Gerin's allegedly setting fire to the hotel, while intoxicated, thereby injuring some guests. Here again it was expressly noted:

"New Amsterdam further alleges that it has been subrogated to the rights of its insured by virtue of the terms of the policy. But it is basic that the subrogee can have no greater rights than the subrogor. We are of the opinion that in this case the hotel has no cause of action, and therefore New Amsterdam cannot be subrogated."

The court then proceeds to rationalize its decision that the action could not be maintained, not on the basis that there could be no subrogation in any event against the dramshop, but only that there could be no subrogation in that case because the hotel was negligent, and being negligent its loss was due in part at least to its own negligence. Therefore the hotel would have no cause of action to which the insurer could succeed.

Eager v. Nathan, supra, was another suit under the Dramshop Act by Robert Eager, d.b.a. Eastman Hotel, individually and for the use of Auto Owners (Mutual) Insurance Company,—Auto Owners being the workmen's compensation insurer for Eager,—against the defendant tavern operators to recover workmen's compensation payments of $6,375 made by Auto Owners to the widow of an employee of Eager who was shot and killed by Carl Swenson, an intoxicated person, who had been sold or given intoxicating liquor by the defendants, and to recover alleged lost gains and profits. The gist of the holding that there could be no recovery is that the hotel owner was not injured in his property and that therefore he could not recover

against the dramshop so that there was no cause of action to which the insurer could succeed.

Courts of review in deciding cases are concerned with the application of the law to the specific set of facts involved in the case. Quite often general language is used in an opinion which at the moment is not considered in its far reaching aspect to other possible sets of facts.

From an examination of the factual situations existing in each of these cases it cannot be said that the courts were undertaking to foreclose the possibility of subrogation in all instances, although there may be general language to the contrary. Rather there is an indication in each opinion that given a proper set of facts, the principles of subrogation might be properly applied.

Counsel for defendant strongly contends that since there is no case in this or any other jurisdiction holding that an automobile insurance company of a party damaged by an intoxicated person may recover against the dramshop operator under the doctrine of subrogation is a forceful reason for denying the right in this case. This contention is fully answered by the words of Justice Bristow in Smith v. Clavey Ravinia Nurseries, Inc., 329 Ill. App. 548, 69 N.E.2d 921, as follows:

"The mere fact, however, that the doctrine has not been invoked in this situation heretofore, is not a prima facie bar to its applicability in this proceeding, for the calcification of legal concepts, an inherent tendency of the common-law system, must be guarded against if our legal system is to cope with contemporary problems."

■ From the foregoing analysis and in the light of the stipulation of facts in this case, we conclude that the right of subrogation exists in the plaintiff. The action of the Trial Court is therefore reversed and a

judgment will be entered here for the plaintiff and against the defendant, Maurice Tempel, doing business as Tempel's Tavern, for $495.32 and costs.

Reversed and judgment here.

CARROLL and REYNOLDS, JJ., concur.