Delbert E. Remsen, Administrator of the Estate of George W. Remsen, Deceased, and Elizabeth N. Remsen, Plaintiffs-Appellants, v. Midway Liquors, Inc., a Corporation, and Town Hall Tavern, Inc., a Corporation, Defendants, and Employers Mutual Liability Insurance Company of Wisconsin, Intervenor-Appellee.

Gen. No. 11,428.

Second District, Second Division.

April 19, 1961.

133

Miller, Thomas, Hickey & Collins, of Rockford, for appellant.

Foltz, Haye & Keegan, of Rockford, for appellee.

SPIVEY, J.

This appeal involves an order of the Circuit Court of Winnebago County distributing the settlement proceeds for injuries in loss of support in an action under Art. VI, Sect. 14 of the Liquor Control Act, Chap. 43, Sect. 135, Ill. Rev. Stat. 1957.

George W. Remsen was insured under a family automobile insurance policy issued by the intervenor, Em-

ployers Mutual Liability Insurance Company of Wisconsin. In addition to the usual and customary coverage provided, Remsen obtained and paid an additional premium for what is termed "Family Protection Against Uninsured Motorists", said coverage affording liability limits of $10,000.00 for each person and $20,000.00 for each accident.

On September 29, 1957, Remsen and his wife, Elizabeth, were involved in an automobile collision with one John Reynold Carlson who carried no liability insurance on his automobile. As a result of the occurrence, Remsen received injuries from which he subsequently died and his wife, Elizabeth, was seriously injured in her person.

Subsequently, on September 23, 1958, Delbert E. Remsen, as Administrator of the Estate of George W. Remsen, and Elizabeth N. Remsen, individually, instituted a Dram Shop action under the provisions of Art. VI, Sect. 135 of the Liquor Control Act against Midway Liquors, Inc. and Town Hall Tavern, Inc. alleging that they caused the intoxication of Carlson in whole or part.

Count I of the complaint is an action by the Administrator for the benefit of the dependents of George W. Remsen, his widow, Elizabeth, and their five minor children, for injury in their means of support. Count II is an individual action by Elizabeth N. Remsen, the widow, for injuries to her person. The appeal presents no issue as to the liability of either dram shop defendant.

Following the filing of the dram shop action (date not disclosed by the record), the suit was settled by the Administrator and Elizabeth Remsen individually with Midway Liquors, Inc. and a covenant not to sue executed. By the terms of this settlement Midway Liquors, Inc. paid to the Administrator the sum of $6,250.00 for injury to means of support and to Elizabeth N. Remsen the sum of $6,250.00 for her personal injuries. On

135

November 18, 1959, by stipulation of the Administrator and Elizabeth Remsen, an order dismissing the cause of action as to Midway Liquors, Inc. was entered.

Thereafter (date not disclosed by the record), the Administrator entered into a settlement agreement with the defendant Town Hall Tavern; by the terms of said agreement the Administrator was paid the sum of $13,250.00 for injury to means of support. On March 7, 1960, Elizabeth Remsen dismissed Count II of the complaint. The record is absent of any order dismissing Count I as to the defendant Town Hall Tavern.

Pursuant to a previous order of July 21, 1959, all settlement funds were deposited with the Clerk of the Court pending further order of distribution. This fund amounted to $26,500.00 which included $6,625.00 received by Elizabeth Remsen for her personal injuries, and $19,875.00 received by the Administrator for the loss of means of support alleged to have been sustained by the dependents of George W. Remsen, deceased.

On February 19, 1960, Employers Mutual Liability Insurance Company of Wisconsin was granted leave to intervene and file an intervening petition as provided by Chap. 110, Sect. 26(1)(c), Ill. Rev. Stat. 1959.

In their intervening petition, Employers allege they have been subrogated to $19,500 of the settlement proceeds of the dram shop action and ask that they be reimbursed in that amount out of the funds in the hands of the Clerk of the Court. The petition further alleges that Employers had paid pursuant to its insuring agreement rider for family protection against an uninsured motorist the sum of $10,000.00 to Delbert E. Remsen as Administrator and $9,500.00 to Elizabeth N. Remsen.

In consideration of these payments Delbert E. Remsen as Administrator of the Estate of George W. Remsen, and Elizabeth N. Remsen each executed identical instruments (except as to amount) to Employers styled "Policy Release and Trust Agreement" each dated

October 22, 1958. These instruments were prepared by a representative of Employers and provided as follows:

"Know all men by these presents: that for and in consideration of the payment to me of . . . by Employers Mutual Liability Insurance Company of Wisconsin, hereinafter called the Company, the receipt of which is hereby acknowledged, I do hereby fully and forever release and discharge the Company from any and all claims and demands, actions and causes of action, which I may have against the Company under the 'Family Protection Against Uninsured Motorists' endorsement attached to Policy No. 0237–00–024257, because of the death of George W. Remsen, resulting or to result from that certain accident on or about the 29th day of September, 1957, at or near the intersection of Route 173 and Collins Road, County of Winnebago, State of Illinois.

"I have not made any settlement with or prosecuted to judgment any action against any person or organization who may be legally liable for bodily injury on account of which the Company is making this payment. Such person or organization, wherever mentioned in this Release and Trust Agreement, shall include John Reynold Carlson and also any person or organization who may be liable for said bodily injury under Section 14 or 15 of Article VI of An Act of the General Assembly of the State of Illinois entitled 'An Act Relating to Alcoholic Liquors,' in force February 1, 1934, or any law amendatory thereof.

"I agree that this settlement is in full compromise of a doubtful and disputed claim both as to the question of liability and that the payment is not to be construed as an admission of liability.

"I further agree that in consideration of this payment:

 (a) any amount which I may be entitled to recover from any person who is an insured under the

137

bodily injury liability coverage of said policy shall be reduced by the amount of this payment;

(b) that the Company shall be entitled to the extent of this payment of $10,000 to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery I may have against any person or organization legally responsible for the bodily injury because of which this payment is made;

(c) that I shall hold in trust for the benefit of the Company all rights of recovery to the extent of the payment of . . . which I shall have against such other person or organization because of the damages which are the subject of claim made under the 'Family Protection Against Uninsured Motorists' endorsement;

(d) that I shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(e) that if requested in writing by the Company, I shall take, through any representative designated by the Company, provided the Company pays all attorney's fees, costs and expenses, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in my name; in the event of a recovery, the Company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(f) that I shall execute and deliver to the Company such instruments and papers as may be appropriate to secure my rights and obliga-

138

tions and those of the Company established by this provision."

The provisions of the policy endorsement covering Family protection Against Uninsured Motorists (Bodily Injury Liability) as amended, insofar as they are germaine provide:

"1. Damage for Bodily Injury Caused by Uninsured Automobiles. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purpose of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree and the insured so demands, by arbitration."

"4. Limits of Liability. (a) The limits of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person the limit of liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages, including

139

damages for care or loss of services, because of bodily injury sustained by two or more persons as a result of any one accident."

"7. Trust Agreement. In the event of payment to any person under this endorsement:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this endorsement;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as

140

may be appropriate to secure the rights and obligations of such person and the company established by this provision."

"8. Payment of Loss by the Company. Any amount due hereunder is payable (a) to the insured, or (b) if the insured be a minor to his parent or guardian, or (c) if the insured be deceased to his surviving spouse, otherwise (d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents; provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof."

The court by its judgment order appealed from, in addition to making certain findings of fact consistent with the facts set out in this opinion, found, that the sum of $26,500.00 now in the hands of the Clerk must be distributed to resolve the claims of Delbert E. Remsen, administrator, Elizabeth N. Remsen and Employers; that plaintiff's attorneys had rendered legal services of the fair value of $8,800.00 which they are entitled to recover from the aggregate sum of $26,500.00; that Employers is entitled to the sum of $10,000.00 recovered by the administrator, said sum to be deducted from the share of the proceeds after attorney's fees are deducted which amounts to $17,700.00; that from the balance then remaining of $7,000.00, the plaintiff, Elizabeth N. Remsen shall have deducted from her share of the recovery ($6,625.00) for her personal injuries the sum of $4,400.00 to be paid to Employers; and that the balance then remaining of $3,300.00 be distributed to the dependents of George W. Remsen, deceased, for their loss of means of support. The judgment order then ordered, adjudged, and decreed that the Clerk pay Employers the sum of $10,000.00 from the proceeds ob-

tained under Count I; pay Employers the sum of $4,-400.00 from the proceeds obtained under Count II; pay plaintiff's attorneys the sum of $8,800.00; and pay unto the dependents of George W. Remsen for their loss of means of support, the sum of $3,300.00 to be apportioned to the widow and five children each the sum of $550.00.

Insurance for protection against bodily injury as a result of the wrongful acts of an uninsured motorist is of relative recent origin. The purpose is to provide some form of compensation for innocent victims of accidents.

Under the uninsured motorists endorsement the insurance company agrees to pay the insured all sums that he shall be legally entitled to recover as damages for bodily injury sustained by accident arising out of the ownership, maintenance and use of an uninsured automobile.

In the event of payment to any person under the subject endorsement the policy provides by its endorsement conditions entitled "Trust Agreement" that the company shall be entitled to the *extent* of such payment to the *proceeds* of any settlement or judgment that may result from the exercise of any *right of recovery* of such person against *any person or organization* legally responsible for the bodily injury because of which such payment is made, and further provides that the person receiving payment shall execute and deliver to the company such instruments as may be appropriate to secure the rights and obligations of such person and the company.

Appellants contend that the Policy Release and Trust Agreements executed by the administrator and Elizabeth Remsen amounted to an assignment of an action for injuries to the body and as such are prohibited in Illinois. If as appellants urge they constitute an assignment of an action for injuries to the

142

body they are void. North Chicago Street Railway Co. v. Ackley, 171 Ill. 100, 49 N. E. 222; and Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170.

Appellee on the other hand suggests that this instrument is a subrogation agreement and only an assignment of the proceeds of any recovery or a part thereof.

Counsel for both parties state and our research confirms, the character of the Trust Agreement has not been construed by any reviewing court in the United States.

█ Basically, subrogation arises in two manners, legal subrogation out of a condition or relationship by operation of law and conventional subrogation by act of the parties.

██ Subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between the parties without regard to form. 83 C.J.S. Subrogation, Sect. 2a. People ex rel. Nelson v. Phillips State Bank and Trust Company, et al., 307 Ill. App. 464, 30 N.E.2d 771.

In 83 C.J.S. Subrogation, Sect. 16, it is said, "As a general rule, any person, who pursuant to a legal obligation to do so, has paid, even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default."

██ Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the pay-

143

ment under circumstances entitling him to contribution or indemnity while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim. 6 C.J.S. Assignments, Sect. 2b (12).

"The word 'assignment' has a comprehensive meaning, and in its most general sense is a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of an estate or right therein." 6 C.J.S. Assignments, Sect. 1a, Siegel v. People, 106 Ill. 89, and Taley v. Schoenholz, 224 Ill. App. 158, 154 N. E. 139.

In New York Casualty Co. v. Sinclair Refining Co., 108 Fed.2d 65, it was stated, "The doctrine of subrogation and a constructive trust are analogous. The creditor is regarded as holding his claim against the principal debtor and his securities therefor in trust for the subrogee."

Based upon the general principles we have set out, we conclude that the Trust Agreement is one of subrogation and not an assignment of an action for injuries to the body. It meets all of the characteristics of subrogation in that the debt was paid under a legal obligation for the wrong of another. It does not transfer the entire claim but only to the extent of the insurer's payment and is repayable only in the event of subrogor's recovery from any person liable for the injury.

An analogous proposition is found in National Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 58 N.E.2d 849. In that case a claim was made by the insured under a policy of forgery insurance. The insurance carrier made payments to the defrauded insured under the terms of the policy and the insured in consideration for such payment executed and de-

livered a loan receipt for the amount paid. The receipt provided that the loan was repayable only to the extent of any net recovery that insured might obtain on account of such loss from the forgeries and as security for the payment the insured pledged the recovery to the carrier and insured agreed to commence and prosecute at the expense and under the control of the carrier an action against the one liable for the forgeries.

The court concluded that it was doubtless the law that the right to litigate a fraud is not assignable at law or equity being contrary to public policy but that the instrument in question was not an assignment of the claim.

46 C.J.S. Insurance Sect. 1209(1)(c), states, "An advance by insurer of the amount of insurance to insured, under a loan agreement reciting that the amount was received as a loan to be repaid only from such recovery as might be had from a third person, does not constitute an assignment of insured's cause of action." See also: Katz v. Hotel Murida, 90 N.Y.S.2d 760, 194 Misc. 741; Kelley Maus & Co. v. Newman, 79 Ill. App. 285; Hibernian Banking Association v. Davis, 295 Ill. 537, 129 N. E. 540; [Farmers' State Bank v. Kid], 313 Ill. App. 132, 39 N.E.2d 394.

Concluding as we have that the instant case presents a case of conventional subrogation, should we, under the facts in this case, extend that doctrine to injuries to the body and would its application promote justice and equity?

The application of subrogation will not create the conditions giving rise to the underlying reasons announced in all of the Illinois decisions, including the Ackley and Bierd cases, for holding an assignment of an action for injuries to the body to be against public policy.

 The doctrine of subrogation has been steadily expanding, is a favorite of the law and has been nur-

tured and encouraged. It is broad enough as now applied to include every instance in which one person not acting as a mere volunteer or intruder pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Smith v. Clavey Ravinia Nurseries, Inc., 329 Ill. App. 548, 69 N.E.2d 921. Cited with approval in Dworak v. Tempel, 18 Ill.App.2d 225, 152 N.E.2d 197; affirmed 17 Ill.2d 181, 161 N.E.2d 258; Geneva Construction Company et al. v. Martin Transfer & Storage Company, 4 Ill.2d 226, 122 N.E.2d 564; and Standard Industries, Inc. v. Thompson, 19 Ill.App.2d 319, 152 N.E.2d 500.

Common law subrogation has been recognized and applied to injuries to the body under the Workmen's Compensation Act of Illinois. Geneva Construction Co. v. Martin Transfer & Storage Co. cited above.

Our attention has not been called to any authority to the effect that subrogation, as opposed to an assignment, of injuries to the body is against public policy and not permissible.

 Finding no public policy reasons for forbidding subrogation of bodily injury cases, we find it was proper in this case for the same reasons they have been found proper in Dram Shop actions involving property damage as announced in the Dworak case cited above.

Appellants contend the court erred in allowing intervention to impress a subrogation claim in a loss of means of support dram shop action.

By the plain terms of the contract of insurance the carrier's right to repayment may be had "against *any* person or organization legally responsible for the bodily injury." (Emphasis supplied)

The dram shop operators were legally liable for the damages and we held that subrogation under the uninsured motorists clause is proper.

146

It is argued that the full amount recovered shall be for the exclusive benefit of the person or persons injured in loss of support. The recovery less the subrogation claim was so distributed.

This subrogation will not deprive a recovery to those entitled to loss of means of support or damages because the funds in the hands of the administrator paid by Employers is available for distribution to the widow and next of kin under the Injuries Act for pecuniary injuries resulting from the death of George W. Remsen.

Appellants further contend that the uninsured motorists protection should be likened to medical payments protection. With this suggestion we are unable to agree.

Payments under the medical payment clause are limited to $500.00 for each person injured *without regard to liability.* They are limited to reasonable expenses incurred by the injured person for medical, hospital, nursing and funeral services. They stand in the same category as any contract for accident insurance. Nor is there any agreement to repay.

On the other hand, uninsured motorists coverage compensates only when there is liability on the part of another for the injury. (Also hit and run). The recovery under the uninsured motorists clause in addition provides for loss of wages and income, loss of support, and pain and suffering which might properly be compensable by the person causing the injury. Recovery under the uninsured motorists clause would not preclude recovery under the medical payments clause.

We have considered the other reasons advanced by appellants in support of their assignments of error and find they are without merit.

Intervenor-Appellee filed a cross appeal and assigned as cross-error the court's awarding attorneys' fees out of the funds paid in settlement of the dram

147

shop action. No claim is made that the attorney fees are unreasonable.

Appellee contends they are entitled to full reimbursement up to the amount of the proceeds paid the administrator and Elizabeth Remsen in the Dram Shop action, before attorneys' fees in that action may be deducted from the proceeds. In particular Employers say that it is entitled to the full $6,625.00 of the proceeds paid Elizabeth Remsen for the injuries to her person rather than $4,400.00 representing the $6,625.00 less attorneys' fees.

The policy and the trust agreement both provide that the company shall be entitled, to the extent of their payments, to the proceeds of any settlement or judgment. We must decide what the word "proceeds" implies.

In Gould v. Lewis, 267 Ill. App. 569, the court said, ". . . 50 Corpus Juris 427, expresses 'a broad middle ground' in the interpretation of the term 'Proceeds. Not a word of any fixed or definite meaning, but of varying and loose significance, employed with different meanings, of equivocal import and great generality. . . . Its meaning in each case depends on its context, depends very much on the connection in which it is employed and the subject matter to which it is applied.' The same authority also states (pp. 429, 430): 'In contracts and written instruments, the word "proceeds" has many meanings and varied usages and is in many instances of doubtful meaning. The subject matter and purpose of a contract must be considered in order to determine the meaning of the word as used by the parties. As used, the word has been variously defined, . . .; it has been held to mean gross proceeds and net proceeds.' From a review of the many authorities cited in Corpus Juris it is clear that the statement therein contained that 'the word "proceeds" has many meanings and varied usages and is in many instances of doubtful meaning,' is fully justified. In 23

Am. & Eng. Ency. of Law, 195, it is stated that 'the term (proceeds) is one of equivocal import. Its construction depends much upon the context and the subject matter to which it is applied. . . . The general rule that where the terms of a contract are ambiguous and uncertain their meaning may be determined from extrinsic evidence, also applies to the instant contract.' "

 A policy of insurance is construed most favorable to the named insured and others who are covered by it. Western States Mut. Ins. Co. v. Standard Mutual Ins. Co., 26 Ill.App.2d 378, 167 N.E.2d 833; Rashinski v. Travelers Casualty Ins. Co., 312 Ill. App. 260, 38 N.E.2d 362; and Scott v. Inter-Insurance Exchange of Chicago Motor Club, 267 Ill. App. 105, affirmed 352 Ill. 572, 186 N. E. 176.

The same rule of construction has oft times been applied against the scrivener of any instrument of contract.

As in the instant case, it is the practice of plaintiff's attorneys to make a charge for their services and should be well known to the scrivener of both the policy and the trust agreements.

 We feel that the only equitable construction to place on the word "proceeds" is that it means what the litigant would actually receive after the reasonable costs of the proceeding including attorneys' fees.

We find another compelling reason for this conclusion. The contract of insurance and the trust agreement permits the insured to institute proceedings against any person liable for their injuries. It is fair to foresee instances wherein the recovery might be equal to or less than the subrogation rights and after applying that deduction, it would leave the insured to pay his attorney out of his own separate funds. This very situation has been recognized in the Workmen's Compensation Act of New Jersey.

Cross-appellant cites the case of Manion v. Chicago, R. I. P. R. Co., 2 Ill.App.2d 191, 119 N.E.2d 498, wherein this court held that an employer who had paid an injured employee under the Workmen's Compensation Act was entitled to reimbursement pursuant to Section 29 (now Section 5 of the Workmen's Compensation Act) out of any recovery by the employee in a common law action against any negligent third party, without bearing a share of costs and attorney fees incurred in the common law action. Worthy of note is the fact that following this decision Section 5 was amended to provide for the employer sharing in the costs and attorneys' fees in the third party common law action.

We do not feel that the Manion opinion will be in conflict in any way with our holding. That decision was based upon statutory subrogation, whereas we are dealing with conventional subrogation based upon contract.

The Manion case hinged upon an interpretation of the statute as did the three cases cited therein. When the Manion case was decided the statute was silent as to attorneys' fees and the court properly concluded that it was the obvious intention of the legislation that the employer be fully reimbursed without regard to attorneys' fees.

We conclude that the trial court properly allocated the attorneys' fees among the various claimants to the proceedings of the dram shop action.

The order of the Circuit Court of Winnebago County is affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.