A-1 Cleaners and Dyers for use of Robert Sheldon, Appellee, v. American Mutual Liability Insurance Company, of Boston, Appellant.

Gen. No. 41,196.

Opinion filed November 20, 1940.

ANGERSTEIN & ANGERSTEIN, of Chicago, for appellant; THOMAS C. ANGERSTEIN, GEORGE W. ANGERSTEIN, CHARLES WOLFF and MARION J. HANNIGAN, all of Chicago, of counsel.

FRANCIS J. GARIEPY and CHARLES E. MALLON, both of Chicago, for appellee.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal from a judgment entered against the American Mutual Liability Insurance Company, garnishee, in the amount of $1,059.20, in a garnishment action instituted to recover the amount of a default judgment obtained by Robert Sheldon against A-1 Cleaners & Dyers, a corporation, defendant's insured. Plaintiff's garnishment interrogatories were based upon this default judgment, against A-1 Cleaners & Dyers, a corporation, in favor of plaintiff, based upon alleged personal injuries arising out of an automobile accident. The answer of the defendant to plaintiff's sixth interrogatory and plaintiff's replication thereto present the issues involved in this case. In defendant's answer to plaintiff's sixth interrogatory defendant stated that it issued a policy of insurance numbered AL 230883, dated the first day of February, 1937, which policy of insurance insured the said A-1 Cleaners & Dyers Company from any liability accruing as a result of the operation of its trucks; that the said A-1 Cleaners & Dyers Company breached the terms of the aforesaid policy of insurance in that said policy of insurance provided that if claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by it or its representative; that said A-1 Cleaners & Dyers Company failed to forward to the American Mutual Liability Insurance Company, of Boston, any demand,

notice or summons or other process issued in the cause of Robert Sheldon v. A-1 Cleaners & Dyers Company, case number 38C-10698.

In plaintiff's replication to the defendant's answer it is stated: "that such garnishee defendant has not truly disclosed all moneys, rights, credits or effects owned or due to A-1 Cleaners & Dyers Co. by virtue of its policy of insurance numbered AL 230883, dated the first day of February, 1937 and that if the defendant, A-1 Cleaners & Dyers Co. failed to forward to the American Mutual Liability Insurance Company of Boston, any demand, notice or summons issued in the cause of *Robert Sheldon v. A-1 Cleaners & Dyers Co.*, case number 38-C-10698, said garnishee defendant, American Mutual Liability Insurance Company, has waived said condition."

From the statement of facts it appears that on December 29, 1937, Robert Sheldon was driving north on Broadway near Ainslie street and was struck by a truck of the A-1 Cleaners & Dyers Company, being operated on the wrong side of the street. Notice of the accident was given the defendant herein, · the American Mutual Liability Insurance Company, which carried the liability insurance for the A-1 Cleaners & Dyers, and it fully investigated the accident. Thereafter on July 14, 1938, suit was filed by Robert Sheldon against the A-1 Cleaners & Dyers, and summons was served on its agent, Rose Cohen, on the same day, returnable to the third Monday of August, 1938. On the return day, the A-1 Cleaners & Dyers failed to file its appearance or answer in court, and the cause was allowed to remain pending without any default action being taken thereon until the 10th day of March, 1939, when it was defaulted and evidence was submitted to the court and at the conclusion of this hearing a judgment for $1,000 was entered.

From the record in this case, it appears that there was an interim of about six months from the return date of the summons and the date when the default

was taken and judgment entered, during which time plaintiff's attorney conferred and corresponded with defendant concerning the default of the A-1 Cleaners & Dyers and discussing settlement of the case. On November 15, 1938, plaintiff's attorney talked to Mr. Johnson of the American Mutual Liability Insurance Company, advising him of its insured's default, and gave him the title and number of the pending case and offered to stipulate to allow it to come in and defend. This, however, is controverted by the evidence of witnesses offered by defendant. Mr. Johnson, for the defendant, asked why the case could not be settled and requested copies of plaintiff's bills and medical reports. In response to this request, plaintiff's attorney sent defendant a letter dated November 21, 1938, again giving the court number and title of the pending case, together with copies of the medical reports concerning plaintiff's injuries, and asked to be advised of defendant's position in the matter. Following a number of telephone conversations concerning the extent of plaintiff's injuries, the amount asked in settlement, a request for a medical examination was made and an agreement to execute a stipulation concerning such examination. Upon failure to receive this stipulation plaintiff's attorney again wrote and asked defendant to take some action. Defendant immediately replied by letter on January 4, 1939, enclosing the stipulation, but again making no disclaimer of its liability under its policy. The medical examination was had shortly thereafter on a Saturday at defendant's doctor's office, and Dr. Test was present with plaintiff at plaintiff's expense. On February 16, 1939, defendant forwarded a copy of its medical report to plaintiff's attorney, and thereupon followed a number of telephone conversations between plaintiff's attorney and defendant's adjuster.

After nearly 4 months of correspondence and negotiations, default was taken, evidence heard in the circuit court and judgment entered against the A-1

Cleaners & Dyers Company for $1,000 and costs of suit. An execution was issued and returned no property found. Thereafter, on June 23, 1939, this garnishment suit was filed. Defendant's answer denied liability under its policy by reason of its insured's failure to comply with the condition of the policy requiring its insured to forward the summons. Thereupon, plaintiff's replication was filed alleging a waiver of such condition. Upon a full and complete hearing, the trial court held as a finding of fact that the breach of such condition of defendant's policy had been waived by defendant's subsequent course of conduct and entered judgment for $1,059.20.

The plaintiff in this action contends that a condition in a liability policy of insurance, requiring the insured to immediately forward the summons served upon it to the company, is a condition inserted by the company for its own benefit, and, as such, can be waived by it. Plaintiff further suggests that while the word "waiver" has been variously defined, and has sometimes been used interchangeably with the word "estoppel," it has a definite and distinct meaning of its own. Waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of such relinquishment. It is not the same as estoppel in that in a waiver it is not necessary that the party claiming the waiver should have been misled to his injury by the acts or conduct of the insurer, or that prejudice result to the party in whose favor the waiver operates. Plaintiff quotes courts of last resort on questions of waiver of like character to that suggested by plaintiff in the instant case. From the briefs and record, it appears that this garnishment action was tried and should be considered on the issue of waiver by the garnishee defendant of the provisions of the policy, and that therefore, the only issue to decide is whether the trial court erred in holding that there was a waiver.

The defense that was offered by defendant on this question of waiver is that, while defendant admits that an insurer may by its actions or course of conduct create a situation where the insurer can be said to have waived its rights under a policy contract or to have forfeited such rights, yet, in the instant case, all of the combined acts of defendant which plaintiff contends constituted a waiver, all of the correspondence and conversation, arose out of intercourse solely between plaintiff's attorney and the defendant. Defendant suggests that there is not one word in the record of any acts, words or conversation between defendant and its assured, A-1 Cleaners & Dyers, upon which plaintiff seeks to predicate his theory of waiver, and that each and every one of the acts of the defendant which plaintiff contends constitute a waiver, arose solely between the defendant and plaintiff's attorney; and further suggests that the theory of waiver cannot be extended to cover negotiations pertaining to a possible settlement of a demand made by a third party asking damages for alleged personal injuries.

In discussing this question, we must have in mind the facts as they appear in this record. We find that from November 15, 1938, when defendant was advised of the pending lawsuit against its insured and ascertained that the insured had not forwarded the summons to it in accordance with the terms of its policy, the defendant's conduct negatived any intention on its part to disclaim any liability on its policy because of the breach of the condition in the policy regarding the forwarding of summons by insured to the defendant. The condition relied upon is in the following words:

*"5—Notice of Accident—Claim or Suit*

"Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars suf-

ficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the name and address of the injured and of any available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." It further appears from the facts as we have them that on November 15, 1938, upon being advised that it was in default and being given the title, number and court in which the case was pending, and being told by plaintiff's attorney that he would stipulate to allow it to file its appearance and answer, the defendant requested that it be mailed copies of the bills and medical reports. The medical reports were inclosed by the attorney for the plaintiff in a communication dated November 21, 1938, and this communication gave the court number and name of the case, which communication closed with "Please let me hear from you as to what your position in the matter is." A number of telephone conversations were thereupon had between plaintiff's attorney and defendant's adjuster concerning the extent of the injuries, the amount asked in settlement, and also a request for a medical examination and an agreement to execute a stipulation concerning such examination, which stipulation as executed bore the following caption:

"State of Illinois ⎱ ss.
    County of Cook ⎰

        "R. W. Sheldon,
                *Plaintiff*,
                *vs.*
        A-1 Cleaners & Dyers Co.
        and Kenneth Kessey,
                *Defendants.*        "

This stipulation, as we have indicated, is a stipulation for medical examination from which it appears:

"That D. E. C. Holmblad, a physician and surgeon, duly licensed and authorized to practice medicine in the State of Illinois, may examine R. W. Sheldon, plaintiff and claimant herein, at the office of the physician, at 28 E. Jackson Blvd., in the City of Chicago and State of Illinois, or any other place, at the convenience of such parties." Examination of plaintiff was had in compliance with this stipulation, and thereafter a copy of the medical examination was received by plaintiff's attorney. This stipulation further provided that a copy of the examination mailed to the attorney for the plaintiff within a reasonable time after the making of such examination.

It would, therefore, seem from the acts of the parties that the defendant insurance company had notice of the pendency of the action, the names of the parties thereto and the number thereof. This appears clearly from the stipulation for medical examination itself. It would appear from this record that the insurance company was notified of the pendency of the suit and given the opportunity to enter its appearance even though the time had long since expired for filing an appearance. This is evidenced by plaintiff's exhibit 3, being a letter dated January 3, 1939, addressed to defendant, wherein the following caption appears "In re: Sheldon v. A-1 Cleaners & Dyers, Inc. Case No. 38C-10698," which letter stated:

"Unless I receive some action on this case before the end of this week, I am hereby serving you with notice that I am going to go in and prove up the matter as a default.

"I had wished to extend to you the courtesy of notifying you of your default so that you would not be taken advantage of. . . . " It is to be noticed too that the plaintiff did not enter a default against defendant's insured until March 10, 1939, although he could have done so at any time after the return day of summons, which return day was the third Monday of August, 1938. Evidence was submitted to the court

at the time default was taken and judgment entered for $1,000. As it appears from this record, it was during the period of approximately 6 months from the return day of the summons and until default was taken that plaintiff's attorney and the defendant were corresponding, during which time the defendant was advised of the pendency of the personal injury action. It appears further that during this time defendant did not disclaim liability under the policy, although it knew of the breach of condition regarding delivery of summons to it, and that the first time defendant disclaimed liability was in its answer to the garnishment interrogatories.

The defendant's position seems to be that the proceeding by way of garnishment is purely statutory and is an action at law and not in equity and the trial in a garnishment proceeding should be conducted as in other civil cases and the rules of law applicable to procedure, burden of proof and evidence are the same as in other civil cases. While, of course, that suggestion is the rule, the real point at issue is whether any acts of the defendant waived its right to insist on the terms of its policy of insurance and whether the breach of the condition prevented the court from granting the relief prayed for in this garnishment proceeding. The defendant, by its representative had notice of the filing of this lawsuit, which was given to the representative by the attorney for the plaintiff, and not alone the fact that defendant had knowledge but with that knowledge entered into a stipulation and in preparing this stipulation it appears that the plaintiff's name, the title of the case, as well as the name of the A-1 Cleaners and Dyers appeared in the caption at the head of the stipulation, and that the purpose of the stipulation was for the examination of the plaintiff for the purpose of determining his injuries and physical condition. It would be a harsh rule that would permit defendant to disclaim liability, after the plaintiff has apparently

been fair in notifying defendant of the pendency of the suit, and in not entering default for more than 6 months while negotiations for settlement were under way.

There are several cases that have been called to our attention and while the facts may not be exactly such as we have before us, still in the case of *Brogdon v. American Automobile Ins. Co.*, 290 Mich. 130, 287 N. W. 406, the court said regarding the question of waiver by an insurance company of performance of a condition, as follows:

" 'First, we must start upon the premises that the plaintiff stands in the same position as the defendant would stand who is suing the American Automobile Insurance Company, garnishee defendant, upon his policy. The next question involved is, was there a waiver of the clause requiring a full and truthful account of the circumstances leading up to and attending the accident? If there was, the defendant in this case cannot defend under the terms of the policy. (See, on waiver or estoppel, *Beals v. Central Mutual Auto Ins. Co.*, 269 Mich. 477, 257 N. W. 868; *Peters v. Sturmer*, 263 Mich. 494, 248 N. W. 875; *Wolverine Mutual Motor Ins. Co. v. Clark*, 277 Mich. 633, 270 N. W. 167; *Kipkey v. Casualty Assn. of America*, 255 Mich. 408, 414, 238 N. W. 239). These cases promulgate the rule that facts and circumstances may show a waiver, and anything done by an insurance company after they learn the true facts that may be considered as a waiver, as a rule will be considered a waiver, for "the rule of construction is that clauses favoring the insured shall dominate those for the benefit of the insurer." And if an insurance company has knowledge of facts, and acts with knowledge of those facts that showed an intention to waive the terms of the policy, the insured may recover.' "

This court in a somewhat similar action, *Rowoldt for use of Flanagan v. Cook County Farmers Mut. Ins. Co.*, 305 Ill. App. 93, which was a garnishment pro-

ceeding against defendant, garnishee, insurance company, where the question of a policy provision as to notice was involved, said:

"Defendant asserts that the liability insurance policy issued to Rowoldt provided that within five days after the happening of any alleged automobile accident he should give notice in writing to the secretary of the insurance company and that no such notice was given; that he did not immediately forward to the garnishee defendant any summons served upon him in any suit instituted against him as a result of the automobile accident. To this the plaintiffs reply that the requirement of written notice within five days was waived and the defendant garnishee was fully informed of the facts and through its counsel assisted in the trial of the action against the insured, Rowoldt. . . .

"In August, 1937, Rowoldt received a summons in connection with the claims of plaintiffs and this was mailed to Mr. Walsh, who prepared and filed an answer on behalf of Rowoldt. Rowoldt testified to having various conversations with Walsh with reference to plaintiffs' suit, Mr. Walsh advising how they might be able to get a cheaper settlement; Rowoldt testified that Walsh advised him to stick to his first story denying he was in the accident; this was denied by Walsh, but Mr. Walsh was present October 15, 1937, when Mr. Rowoldt in a deposition said he was not present at the time of the accident. There is further testimony as to conversations between Walsh and Rowoldt and Mrs. Rowoldt, who was riding with Rowoldt at the time of the accident. Subsequently, in February, 1938, Mr. Walsh withdrew his appearance in plaintiffs' case and Rowoldt employed other counsel."

Then again, the court stated:

"Moreover, the rights of the insurance company were not prejudiced by the failure of Rowoldt, the insured, to file the written notice or truthfully to in-

form the company of the facts in the first instance. Similar facts were under consideration in *Pacific Indemnity Co. v. McDonald,* 107 F. (2d) 446, 450, where the insurance company made the claim that the false statements of the insured *'ipso facto* breached the insurance policy.' The court held that 'The prompt withdrawal of the falsehood cured the default in the absence of some showing that the company was prejudiced by the delay in telling the truth.' To the same effect is *Harrison v. United States Fidelity & Guaranty Co.,* 255 Ill. App. 263, and other cases.''

In the instant case there is no controversy but what the insurance company had knowledge of the proceeding and after having such knowledge entered into a stipulation with the plaintiff under which an examination was made of the plaintiff in regard to his physical condition as the result of the accident; and from the facts it seems that the defendant waived the provision in the policy regarding the forwarding of summons and notice of the lawsuit.

These being the facts as we have stated them, we are of the opinion that the defendant waived this provision; and for the reasons that we have stated and from the facts as they appear, the court was justified in entering a finding for the plaintiff upon the facts, and such finding is not against the manifest weight of the evidence, and in entering judgment on that finding in the garnishment proceeding for $1,059.20.

Accordingly the judgment of the court is affirmed.

*Affirmed.*

Denis E. Sullivan and Burke, JJ., concur.