**Martin Kaluza and Edward Kaluza, Plaintiffs-Appellants, v. The North American Company for Life, Accident & Health Insurance, Defendant-Appellee.**

Gen. No. 52,336.

First District.

June 6, 1969.

Harold A. Liebenson, of Chicago, for appellant.

Schiff, Hardin, Waite, Dorschel & Britton, of Chicago (James B. O'Shaughnessy, William T. Hart and Gary L. Mowder, of counsel), for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiffs appeal from a bench trial judgment that they take nothing by their suit for a breach of an insurance agency contract. The complaint is in three counts. The first alleges damages to both plaintiffs. The second count alleges damages to Martin only. The third count seeks recovery by both against the defendant on a quantum meruit basis. It is the plaintiffs' contention that the defendant company unlawfully terminated, canceled, repudiated or breached the agency contract with them to their damage. The trial court properly held that the contract was lawfully terminated.

The agency contract involved here was one entered into between high-class business executives of long experience and expertise in the insurance field. The record discloses that the preliminary negotiations are of little or no importance in the determination of the issues here involved other than to furnish a backdrop for the contract which ultimately resulted. Edward Kaluza had some 18 years' experience with great success in the organization of insurance agencies and the sale of life insurance for a competitor company of the defendant. His son, Martin, had had insurance training, but was then presently employed full time with Motorola and devoted his spare time to assisting his father in the insurance agency. It was a highly successful life insurance agency. Its services were coveted by the defendant. The plaintiffs were willing to be coveted if the price was right. A contract was entered into on March 15, with an effective date of March 1. There is nothing in the rec-

ord to justify any thought that there was any failure to disclose existing facts or a misrepresentation of any existing facts on the part of any of the parties. An office was set up, agents and receptionists employed, brochures obtained, business transacted and the defendant paid the agency commissions amounting to $2,500.09, from March 1 to July 15. On this latter date, the agency contract with the plaintiffs was terminated.

The backdrop further discloses that by entering into the contract with the defendant, Edward might well lose premium renewals with the competitor company. This he did not want to do. In an attempt to avoid this possibility, the agency contract with the defendant was made in Martin's name and granted him an exclusive agency for the defendant in Cook and several other Northern Illinois counties. A supplemental letter was treated as a part of the contract in which Martin faithfully represented to the defendant that his father would be active in the support and aims of the agency agreement and "with full and competent energy to the purposes of the agreement." The agreement further provided that if Edward M. Kaluza should fail to perform as thus represented, "the agency agreement to which this is a supplement may be terminated by the company within the provisions of said agreement provided that death or disability of the said Edward M. Kaluza shall not constitute failure to perform hereunder."

The agency agreement also provided that the general agent agrees "(a) To devote his entire time faithfully and industriously to the service of the company exclusively, and to submit no business to other companies or agencies except such as first shall have been declined by the company." At the time this contract was entered into, Edward was under a contract to devote his full time to the competitor company. At the time the contract was entered into, Martin was working full time as an engineer for Motorola and part time for the com-

476

petitor insurance company. At no time during the period in which this contract was enforced were these facts any different other than from May 17 to June 29, when the competitor company had canceled its contract with Edward.

Upon notice of such cancellation, Edward immediately contacted the officials of the competitor company, met with them, obtained an agreement to reinstate upon condition that he devote 100% of his time to the competitor company and further that his son either devote his time in the insurance field to the competitor company or at least desist from activity in any other life insurance company. While the general agency contract was in the name of Martin, it is apparent that it was intended to be obligatory upon Edward and for that matter, Edward reported the income from the sales under the contract in his own individual income return. It is thus apparent that the contract which the plaintiffs seek to enforce was abortive from its very inception and all parties were aware of this fact. It requires no perspicacity to observe that neither of the Kaluzas could perform their contract with the defendant without violating existing obligations with other companies. It is equally perfectly apparent that Edward came to the crossroads where he either devoted his time to the defendant or to the competitor company. After 18 years with the competitor company, he went back to his first love and abandoned his flirtation with the defendant. His repudiation of the contract preceded that by the defendant. His repudiation of the contract justified the cancellation of the contract by the defendant under the supplemental agreement for it so specified. When Edward was no longer with the defendant or complying with the contract, then the cancellation of the agency contract under the supplemental agreement was authorized. Its terms were specific and precise. Death or disability of Edward alone permitted

477

the continuation of the agency contract without performance on the part of Edward.

In Illinois as long ago as Orr v. Ward, 73 Ill 318 (1874), our Supreme Court stated:

> "Before appellee could recover, in any event, he must aver and prove he kept and performed his part of the agreement. This he has not done. It was the express agreement he should devote his whole time and attention solely to the interests of his employers. The proof shows he was, for a part of the time, at least, covered by the contract, engaged in taking orders for the Phila. Collar Co., for the sale of its goods. This is sufficient to bar a recovery, and is such a breach of the contract as would justify a rescission, although appellee may not have been discharged for that reason."

To a like tenor is 44 CJS, Insurance, § 155, where it is stated on page 829:

> "Where the agent agrees to devote his entire time and energy to the company's business, he is bound to devote his time and energy with that degree of diligence and attention usual among industrious business men engaged in like business and pursuing no other avocation."

Indeed it has been held that the mere making of a contract with a competing company is a renunciation of one's obligation under a full-time contract and is in itself sufficient to entitle the company to treat the agency contract as terminated. Wyatt v. Southwestern Life Ins. Co. (Tex Civ App), 149 SW2d 1063 (1941). The renunciation and the repudiation of the contract in the case at bar was on the part of the plaintiffs and not on the part of the defendant.

The plaintiffs, however, assert that since the defendant indicated in its notice of termination that the reason

478

for such termination was that the president of the company had no authority to enter into this contract with the plaintiffs, it is now bound by that election irrevocably and if the reason assigned is erroneous, any valid reasons for the termination of the contract are either waived or barred through estoppel. In Illinois State Toll Highway Commission v. M. J. Boyle & Co., 38 Ill App2d 38, 51, 186 NE2d 390, 396, the court stated:

> "The wisdom, fairness or folly of a contract made between parties fully competent to contract, and based upon a proper consideration, is not a matter of concern to a court where no fraud or overreaching is claimed. The courts cannot relieve parties from their own imprudence in taking on undue risks. . . ."

It is pure sophistry to assert that all parties were not fully aware of the hazards inherent in Edward's relationship with the competitor company. They contracted on that basis. All parties knew that it had its risks and its hazards. The plaintiffs even insisted that they be protected against it. When the ax fell, Edward elected and having elected, he repudiated the contract upon which he now sues. He cannot have his cake and eat it too. It seems clear to us that the defendant-company performed its part of this agreement. They paid the commissions earned during the period the agency contract was in force and terminated it according to its terms. Waiver and estoppel are instrumentalities of the law to prevent injustice—not to accomplish it.

So far as the quantum meruit basis of recovery is concerned, we find it difficult to find any unjust enrichment of the defendant under the circumstances here stated. In fact, we find it difficult to find any enrichment at all when what must be one of the greatest life insurance areas in the world was tied up on an exclusive contract with two people who could not perform their end of the

■■■■■■

bargain without violating other contracts and who ultimately repudiated their own contract with the defendant.

It seems clear to us that the trial court was squarely on target in the judgment entered in this cause. His judgment is affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.