JAY BAIER *et al.*, Plaintiffs-Appellants, *v.* STATE FARM INSURANCE COMPANY *et al.*, Defendants-Appellees.

(No. 58174;

First District (5th Division)—May 9, 1975.

John Doyle, William J. Harte, Ltd., and Keven M. Forde, Ltd., all of Chicago (William J. Harte and Keven M. Forde, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland and D. Kendall Griffith, of counsel), for appellee Allstate Insurance Company.

Taylor, Miller, Magner, Sprowl & Hutchings, of Chicago (James J. Hoffnagle and Alfred C. Tisdahl, of counsel), for appellee State Farm Insurance Company.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff, an attorney, brought this class action on his own behalf and on behalf of all persons similarly situated against defendants, State Farm and Allstate Insurance Companies. He is seeking to recover reasonable attorney's fees which were denied him by defendants after he had allegedly obtained a recovery for State Farm on its subrogated medical payments claim. Defendants filed motions for summary judgment based on the pleadings and plaintiff's deposition, and after a hearing the court entered summary judgments against plaintiff. Plaintiff's motion for reconsideration, supported by affidavit, was denied on July 31, 1972.

On appeal plaintiff contends that (a) a genuine issue of material fact existed as to plaintiff's consent or waiver, and (b) defendants were not entitled to the entry of a summary judgment as a matter of law.

The pertinent evidence which was before the court is as follows: Plaintiff was retained by Richard Kinkaid to represent him in a claim arising out of an automobile accident with one Soren Jensen, on November 30, 1967. Plaintiff and Kinkaid agreed that he would receive as his attorney's fee a contingent fee of one-third of all amounts which might be recovered in settlement or trial in any action against Jensen.

At the time of the accident Kinkaid was driving a car owned by Marge Burridge and insured by State Farm. Pursuant to its policy State Farm paid Kinkaid the full amount of the medical coverage provided by the policy, or $1000. This sum did not cover all of Kinkaid's medical expenses. In obtaining the $1000 Kinkaid also signed, on November 21, 1968, a document entitled "Loan Receipt Under Medical Payments Coverage." This document provided that Kinkaid acknowledged the receipt of $1000 from State Farm as a loan "repayable only in the event and to the extent that any net recovery is made" by him from a third party on account of his personal injuries sustained in the accident.

On June 3, 1968, plaintiff filed suit for Kinkaid and against Jensen in Lake County, Illinois. He also allegedly did extensive work on the case including answering interrogatories, appearing at four depositions, reviewing records and otherwise preparing the case for trial. After making the medical coverage payment and after the Lake County litigation was commenced, State Farm notified Allstate, Jensen's insurer, that it had a subrogation agreement with Kinkaid and asserted a lien to the extent of its payments to Kinkaid.

On about September 2, 1969, plaintiff began discussions of a possible settlement with Allstate. Eventually Allstate agreed to settle the case for $12,000 but demanded that $1000 go to State Farm for its lien. Plaintiff informed State Farm of the settlement negotiations. He called State Farm to determine whether they were going to insist upon the full $1000 or whether they would waive or compromise their lien. State Farm insisted on the full $1000. He then, both before and after settlement, requested a reasonable fee for the work he had done in getting Allstate to pay $12,000. State Farm refused these requests. Kinkaid told plaintiff to accept the $12,000 offer. This was done on September 15, 1969. Allstate issued two drafts, one to the plaintiff and his client for $11,000, and the other to State Farm for $1000. Although plaintiff thought it was Allstate's idea to issue the drafts in this manner, he raised no objection.

Plaintiff took his fee of one-third of $11,000 from Kinkaid. No one from State Farm ever requested that plaintiff represent it. Plaintiff never had a contract of employment with State Farm. Plaintiff knew Allstate's position was that $1000 had to go to State Farm.

OPINION

During oral argument plaintiff conceded that Allstate should not be held liable. We have reviewed the record and the pertinent law and agree with plaintiff. Therefore, the summary judgment in favor of Allstate is affirmed, and the remainder of our discussion will deal solely with State Farm.

In their briefs all parties agree that the lower court rested its decision on the finding that plaintiff agreed to the method of settlement and thus waived any further compensation. Plaintiff argues that a genuine issue of material fact existed as to waiver or consent, precluding summary judgment, while defendants argue that waiver or consent was demonstrated as a matter of law.

■■ The principles controlling section 57 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57) are well defined. Summary judgment in a proper case is a procedure to be encouraged for it benefits not only the litigants but the community as well. (See *Allen v. Meyer*, 14 Ill.2d

284, 152 N.E.2d 576.) "[H]owever, it is a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist." *Lumbermens Mutual Casualty Co. v. Poths*, 104 Ill.App.2d 80, 87, 243 N.E.2d 40.

When presented with a motion for summary judgment, the court must first determine if a genuine issue exists as to a material fact. If one exists, summary judgment is improper as the court may not summarily determine a material fact issue. If, on the other hand, the court finds no genuine issue as to any material fact, then the court must proceed to determine whether or not the moving party is entitled to judgment as a matter of law. (*Applicolor, Inc. v. Surface Combustion Corp.*, 77 Ill.App.2d 260, 222 N.E.2d 168.) The right to summary judgment must be clear beyond question (*Patterson v. Stern*, 88 Ill.App.2d 399, 232 N.E.2d 7), and when making this determination, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. *Lumbermens Mutual Casualty Co.*

Defendants argue that a number of facts demonstrate conclusively that plaintiff agreed to a compensation of one-third of $11,000 and waived any further remuneration. They point out that plaintiff was aware of the existence and nature of State Farm's claim and also that he was aware that defendants considered the loan receipt a valid subrogation lien. Plaintiff also knew that Allstate would not settle unless State Farm's lien had been taken care of. Plaintiff's request for an attorney's fee was also denied prior to settlement. With all this knowledge plaintiff agreed with Allstate to an aggregate settlement figure of $12,000. Plaintiff raised no objection to the way Allstate issued the settlement drafts, even though the one draft for $1000 was made payable only to State Farm and sent directly to it. Thus, defendants argue, "[b]y settling with knowledge of the dispute, he waived any claim which he might have had to the proceeds of the settlement."

■■ The question for this court is whether an issue of fact exists as to plaintiff's consent to and waiver of any additional compensation. In *National Bank v. Newberg*, 7 Ill.App.3d 859, 868, 289 N.E.2d 197, the court stated:

> "The principle of 'waiver' will be recognized whenever a party intentionally relinquishes a known right or as in this case acts in such a manner to warrant an inference of such relinquishment. (*A-1 Cleaners & Dyers v. American M. L. Insurance Co.*, 307 Ill. App. 64, 73, 30 N.E.2d 87.) It is an equitable principle invoked to further the interests of justice. (*Kaluza v. North American Co.*, 110 Ill.App.2d 474, 249 N.E.2d 714.) The fact that Albany was not

a party to the supplementary proceedings is not relevant since waiver (as distinguished from estoppel) depends upon what one himself does without regard to its effect upon the party benefiting from the waiver. See *Adam v. Columbian Nat. Life Insurance Co.,* 218 Ill.App. 54."

After reviewing the record before us, we feel that a genuine issue of material fact does exist. A distinction must be drawn between the settlement of the tort suit against Jensen and any discussion of plaintiff's compensation. When plaintiff settled the suit with the manner of payment in two separate drafts, he was acting on behalf of Kinkaid, his client, and following Kinkaid's directive. If plaintiff had done anything else, he would have violated his attorney-client relationship with Kinkaid. Furthermore, plaintiff never expressly disclaimed taking a reasonable fee for securing the $1000 but rather at several junctures in the proceedings specifically demanded such compensation.

Further, plaintiff is not foreclosed by his settlement with Kinkaid for one-third of $11,000. He could not have taken one-third of $12,000 and charged it to Kinkaid for his client was only entitled to $11,000. (See *State Farm Mutual Automobile Insurance Co. v. Geline* (1970), 48 Wis. 2d 290, 179 N.W.2d 815, 821, and *General Exchange Insurance Corp. v. Driscoll* (1944), 315 Mass. 360, 52 N.E.2d 970 (where attorney was held to be liable to subrogated insurer when he paid full amount of settlement to his client).) Therefore, we find that waiver or consent was not proved as a matter of law, and that this factual issue must be decided by the trier of fact.

Defendants next argue that "[e]ven if the plaintiff did not waive his claim by his actions, it is clear under the law that he does not have any right to an attorney's fee from State Farm." Defendants more specifically contend that (a) it is against public policy for plaintiff to recover a fee from two clients with conflicting interests; and (b) Illinois law does not allow plaintiff to recover a reasonable attorney's fee from State Farm under these circumstances.

As to their first contention; defendants point out that plaintiff initially attempted to get State Farm to compromise its claim and thus he was acting adversely to State Farm's interests. From this fact defendants reason that it would be unethical and against public policy for a lawyer to collect a fee from clients who have competing interests and refer this court to *Strong v. International Building Loan & Investment Union,* 183 Ill. 97, 55 N.E. 675. In *Strong* the court said at page 101:

"Attorneys at law cannot thus accept employment from adverse litigants at the same time and in the same controversy. Nor does it matter that the intention and motives of the lawyers are honest,

as we fully believe them to have been in the present instance. The rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent." (Citations omitted.)

We do not disagree with the *Strong* case; we just find it inapplicable. Under the theory of recovery which plaintiff is advancing and which will be discussed in greater detail later in this opinion, plaintiff is not making a claim against State Farm for an attorney's fee but is merely making a claim against the trust fund he created. (*United Services Automobile Ass'n v. Hills* (1961), 172 Neb. 128, 109 N.W.2d 174.) State Farm merely is a holder of some of these funds. Therefore, whether or not plaintiff represented interests adverse to State Farm is not a relevant consideration.

■■ Assuming, however, that plaintiff's representation of adverse interests is considered relevant, it should be pointed out that State Farm originally did not want plaintiff to do anything in its behalf. Since there is evidence that plaintiff was solely responsible for creating a fund of $12,000, and since State Farm looked to this $12,000 fund for payment of its subrogated claim, it appears that State Farm has now abandoned any hostile position and has also ratified the settlement which plaintiff negotiated. (See *Forsyth v. Southern Bell Telephone & Telegraph Co.* (Fla. 1964), 162 So.2d 916; *General Exchange Insurance Corp. v. Driscoll* (1944), 315 Mass. 360, 52 N.E.2d 970; and *Hills*.) Therefore, under the reasoning above, we do not feel that the public policy of this State would be violated if plaintiff were to succeed in his cause of action.

Defendants also contend that Illinois law does not allow for or recognize the theory of recovery that plaintiff is relying on and refer this court to *Remsen v. Midway Liquors, Inc.*, 30 Ill.App.2d 132, 174 N.E.2d 7, in support of their position.

Plaintiff is urging this court to adopt a theory of recovery commonly known as the "fund-doctrine." This has been defined as "the equitable concept that an attorney who renders service in creating a trust fund may in equity be allowed compensation out of the whole fund from those who directly benefit from its accumulation." (*Geline*, 48 Wis.2d 290, 298, 179 N.W.2d 815, 819.) The reasoning underlying this doctrine was enunciated in *Washington Fire & Marine Insurance Co. v. Hammett* (1964), 237 Ark. 954, 956-57, 377 S.W.2d 811, 813, wherein it was stated:

"The appellant's real grievance lies in having to pay a fee to an attorney not of its own choice. Subrogation however, is governed

by equitable principles. *Webster v. Horton,* 188 Ark. 610, 67 S.W.2d 200. If the appellant had employed its own attorney and had actively participated in the action against Purcell [tortfeasor] it could not fairly have been compelled to contribute to Howard's fee. [The insured's attorney.] *Pontiac Mutual County etc. Co. v. Sheibley,* 279 Ill. 118, 116 N.E. 644. But when the insurance company has benefited from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense. An almost identical case so holding is *United Services Automobile Ass'n v. Hills,* 172 Neb. 128, 109 N.W.2d 174. Other cases recognizing the insurer's duty to contribute to the expense of collection include *Brown v. T. W. Phillips Gas & Oil Co.,* 105 F.Supp 479; *Shawnee Fire Ins. Co. v. Cosgrove,* 85 Kan. 296, 116 P. 819, 41 L.R.A., N.S., 719; *Newcomb v. Cincinnati Ins. Co.,* 22 Ohio St. 382, 10 Am. Rep. 746; *Powers v. Calvert Fire Ins. Co.,* 216 S.C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261."

In our research we have found that most of the jurisdictions which have dealt with this issue have adopted the fund-doctrine.[1]

*Remsen* does not reject the fund-doctrine for Illinois. That case involved the distribution of the settlement proceeds from a Dram Shop suit between plaintiffs, their attorneys and their liability insurer. Involved also was a trust agreement much like the loan receipt in the instant case. The court held that the attorneys were to be paid first from the gross settlement; then, if sufficient funds existed, the insurer's subrogation claim should be paid in full. Because of this holding defendants in the instant case argue that their $1000 subrogation claim should be paid in full and is unaffected by any attorney's fee.

We must recognize that the issue with which this court is confronted, *i.e.,* whether the insurer should bear some of the expense for the creation of the fund, was not raised in *Remsen.* The insureds in that case never sought to have their insurer bear part of the expense. Rather, it was the insurer who was seeking to be reimbursed "before" the attorneys, and on this issue the insurer lost. Therefore, we do not think that *Remsen's* holding is necessarily in opposition to the fund-doctrine.

---

[1] Some of the cases adopting the fund-doctrine are: (a) *Forsyth v. Southern Bell Telephone & Telegraph Co.* (Fla.), 162 So.2d 916; (b) *State Farm Mutual Auto. Ins. Co. v. Elkins* (Tex. Civ. App. 1970), 451 S.W.2d 528; (c) *General Exchange Ins. Corp. v. Driscoll* (1944), 315 Mass. 360, 52 N.E.2d 970; (d) *United Services Auto. Ass'n v. Hills* (1961), 172 Neb. 128, 109 N.W.2d 174; (e) *Tennessee Farmers Mut. Ins. Co. v. Pritchett* (1964), 54 Tenn. App. 410, 391 S.W.2d 671; (f) *State Farm Mut. Auto. Ins. Co. v. Robbins* (Fla. App. (1970)), 237 So.2d 208; (g) *Phillips v. Liberty Mut. Ins. Co.* (Del. 1969), 253 A.2d 502; and (h) *Moyer & Moyer v. State Farm Mut. Ins. Co.* (1973), 190 Neb. 174, 206 N.W.2d 644.

■ Furthermore, *Remsen* did sustain the validity of subrogation in Illinois. In its discussion of this point the court enunciated and cited principles which we feel support the adoption of the fund-doctrine for Illinois. It was stated at page 143:

> "Subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between the parties without regard to form. 83 C.J.S. Subrogation Sec. 2a. People ex rel. Nelson v. Phillips State Bank and Trust Company et al., 307 Ill.App. 464, 30 N.E.2d 771." (30 Ill.App.2d 132, 143.)

It was further remarked at page 144, quoting from *New York Casualty Co. v. Sinclair Refining Co.* (10 Cir. 1939), 108 F.2d 65, 71, that:

> " 'The doctrine of subrogation and a constructive trust are analogous. The creditor is regarded as holding his claim against the principal debtor and his securities therefor in trust for the subrogee.' " (30 Ill.App.2d 132, 144.)

This reliance on equity and the analogy to a constructive trust parallels the reasoning underlying the fund-doctrine which was quoted in *Hammett*.

Two cases have come to our attention which have substantially similar factual settings and which both adopted the fund-doctrine. In *Geline*, State Farm sued for a declaratory judgment to determine the right to settlement funds held by Allstate, the tortfeasor's insurer. State Farm had a $1000 subrogation claim under what appears to be an identical medical payments policy and loan receipt as in the instant case. There, also, State Farm had notified Allstate directly of its claim. The only difference in the cases appears to be the manner in which the two drafts were drawn, a fact which we have previously discussed. The court phrased the issue as: "Is the attorney for the plaintiff in a personal injury action entitled to a fee from subrogated insurers paid out of a settlement of the case?" The court then held at page 821:

> "Because the attorney may not receive payment from his client for that portion of a settlement payable to holders of subrogated or assigned rights and particularly in light of the otherwise unjust enrichment of the holders of those rights, we find the superior merit in the equity approach and accept the rationale of the 'fund-doctrine' cases." 48 Wis. 290, 300, 179 N.W.2d 815, 821.

*Krause v. State Farm Mutual Automobile Insurance Co.* (1969), 184 Neb. 588, 169 N.W.2d 601, 605, *same conclusion reached on rehearing* (1969), 184 Neb. 638, 170 N.W.2d 882, is also particularly in point. In

this case the insured's attorneys were suing for attorneys' fees. The plaintiffs had arranged a settlement of a tort suit with the tortfeasor's insurer, but the tortfeasor's insurer had made a direct payment to the plaintiffs' client's insurer because of a subrogated claim, as in the instant case. The court recognized and adopted the fund-doctrine using the reasoning that a trust fund was created and went on to state, with regard to the form in which the suit was brought:

"Furthermore considering the basic rights involved, equity could not be served by making a distinction based upon form rather than substance. It is apparent that the rule in *Hills*, under such a distinction, could be easily avoided by direct payment of the tortfeasor's insurance carrier to the plaintiff's insurance carrier." [2]

We therefore hold on the basis of the reasoning and authority above discussed that plaintiff could recover under the fund-doctrine if waiver or consent is not proved. Of course, plaintiff would also have to prove the necessary elements for such a cause of action. (See *Geline*, 48 Wis. 290, 300-02, 179 N.W.2d 815, 821-23.) We feel it necessary to point out, since this is a case of first impression in Illinois, that some of these elements may, in themselves, raise genuine issues of material fact.

Defendants have also raised arguments about the appropriateness of plaintiff's class action claim. Defendants concede in their briefs that "the court below was not required to reach this issue and did not decide it." Therefore, this issue is not properly before us, and we decline to make any further comment on it.

The summary judgment in favor of Allstate is affirmed; the summary judgment in favor of State Farm is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

BARRETT, P. J., and LORENZ, J., concur.

---

[2] *Moyer & Moyer v. State Farm Mutual Insurance Co.*, 190 Neb. 174, 206 N.W.2d 644, contains some language which might be read as limiting this principle but is factually distinguishable in that the subrogation claim had been paid in full long *before* any fund was created by the efforts of the plaintiffs-attorneys.