THE HIMMEL CORPORATION, Plaintiff-Appellant, *v.* CHARLES EDWARD
STADE, d/b/a Charles Edward Stade & Associates, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 76-1449

Opinion filed August 26, 1977.

Aladar F. Siles and Robert J. Peters, both of Chicago (Frankel, McKay, Orlikoff, Denten & Kostner, of counsel), for appellant.

James N. Nowacki and John G. Cameron, Jr., both of Chicago (Isham, Lincoln & Beale, of counsel), for appellee Charles Edward Stade.

Garbutt, Jacobson and Lee Associated, of Chicago (E. J. Garbutt, of counsel), for appellee Cartland-Ritter, Inc.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought this action for damages which allegedly resulted from the breach of contract and negligence of Charles Edward Stade, d/b/a Charles Edward Stade & Associates (Stade) and the negligence of Cartland-Ritter, Inc. (C-R). It appeals the trial court's granting of summary judgment in favor of both defendants and presents the following issues for review: (1) whether the trial court erred in finding a certain municipal ordinance invalid; (2) whether disputed questions of fact survived the trial court's determination of the ordinance's invalidity; and (3) whether defendants were estopped from raising the question of the invalidity of the ordinance.

In November 1969 plaintiff entered into a contract with Stade, an architect, to design a building on a site within the Village of Hillside (Hillside). In a contract form which he provided, Stade agreed to prepare "drawings and other documents to fix and describe the size and character of the entire Project as to structural, mechanical and electrical systems, materials and such other essentials as may be appropriate." While it is not expressly stated in the agreement, during oral argument in this court Stade conceded his responsibility to design the project in compliance with applicable codes. In his third-party complaint, Stade alleged that he

subcontracted with C-R, an engineering firm, to provide the mechanical-electrical engineering, and that C-R agreed to submit "all of its plans, specifications and addenda to the specifications * * * in accordance with all applicable ordinances and electrical codes, including but not limited to responsibility that the design, specifications and addenda to the specifications for telephone cables conformed with all applicable ordinances and electrical codes."

In a letter dated April 22, 1970, to Hillside's electrical inspector, which concerned the design of electrical systems in the construction project, C-R stated that "[a]s practicing consulting engineers we are bound to design into our plans all applicable code requirements, however, in excess of these we are limited to the client's wishes."

In his discovery deposition, John Cartland, who was in charge of the work for C-R, testified that his original design encased the telephone wiring within rigid conduit but that, prior to the commencement of construction, the design was changed to provide for the installation of telephone wires in cable trays. Under the new design, the trays were to be laid in the ceiling plenum, a space between the finished ceiling and the rough floor above, and would expose the wiring they carried to the air within the plenum chambers; whereas, the employment of metal cable or conduit would prevent such exposure. He could not remember who had actually changed the design, but it is clear that prior to the installation of the trays he was aware of the design change and of a controversy concerning possible code violations due to the exposure of telephone wiring in plenum chambers.

On a Tuesday in mid-1971, Raymond Bishop, Hillside's electrical inspector, delivered an ultimatum to the general contractor of the construction project that the telephone wires were to be run through conduit and the use of trays was to be eliminated by the following Monday or the project would be closed down for violations of the Chicago electric code, which had been adopted by Hillside. In a letter dated June 1, 1971, to Stade and another dated June 8, 1971, to plaintiff, C-R stated its opinion that the applicable code of Hillside was the NEC, the National Electrical Code, that the use of trays was in compliance with that code, and that the wiring should not be changed as Hillside could not enforce the electrical code of Chicago. Plaintiff, nonetheless, chose to replace the trays with conduit and then brought this action to recoup the additional funds expended in this conversion and for the cost of the trays which could not be returned to the supplier.

In their discovery depositions, both Cartland and Bishop were questioned as to what electrical code was the applicable code in Hillside and what wiring procedure complied with the applicable code. Cartland took the position that Hillside, by enacting the BOAC, the Building

Official Conference of America Building Code, had incorporated the NEC as its electrical code. Bishop, however, was of the opinion that the BOAC provided for the incorporation of the NEC as an alternative only and that Hillside had chosen instead to adopt the Chicago Code as its electrical code.

Concerning compliance, Bishop testified that the normal voltage of a telephone line varies between 20 and 24 volts, but that when a phone is ringing such a line carries 90 volts. In his opinion, any wiring system involving voltage in excess of 70 volts creates a fire hazard when exposed in plenum chambers, and that it is to alleviate this risk that both the NEC and the Chicago code require telephone wiring located in plenum chambers to be encased in conduit or cable rather than exposed in trays. Cartland's opinion, however, was that the NEC allowed the use of trays in plenum chambers for the wiring of data processing systems and because telephone wiring is within the same category, it also may be placed in trays. Neither witness was asked whether data processing systems wiring may be laid in trays under the Chicago electrical code.

To Bishop's deposition, Stade attached several exhibits—which included xeroxed reproductions of section 300.22 of the NEC and section 87—300.21 of the 1970 Chicago Electrical Code. Although phrased in a slightly different manner, each section provides that wiring run through plenum chambers should be completely encased in either MI cable, rigid conduit, EMT (electrical metallic tubing) or flexible metal conduit in either 4- or 6-foot lengths, except that in addition the NEC allowed the use of ALS cable. Each code also provided separately for the wiring of data processing systems lines located within the air space created by raised floors, but the record does not disclose whether this type of wiring may be laid in trays rather than conduit or cable. (Subsection 300.22(d) of the NEC refers to criteria contained in a section (645) which was not placed in the record and the reproduction of subsection 87—300.21(e) of the 1970 Chicago Electrical Code was incomplete.)

During the argument on Stade's motion for summary judgment, the controversy centered primarily upon whether Hillside—in adopting the Chicago code—by reference had validly enacted it. However, because of the view we take of this case, the facts relating to the enactment of the ordinance need not be reported here.

OPINION

■■ Plaintiff first contends that the trial court's determination that Hillside had not validly adopted the Chicago code by reference was erroneous. While the authority of a municipality to enact *an* electrical code—including one which would require the use of cable or conduit in plenum chambers—was never questioned, defendants contend, as they

did in the trial court, that the statutory provisions for the adoption of building codes by reference had not been complied with by Hillside in its enactment of the Chicago code. (Ill. Rev. Stat. 1971, ch. 24, pars. 1—2—4, 1—3—1 *et seq.*) We believe the question presented is abstract, as no effectual relief could have been granted, and a judicial tribunal ought not give opinions on such questions. *Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 206 N.E.2d 500.

■■ ■ Had the trial court found here that the ordinance was not validly enacted and had Hillside been a party, a bar against any imposition of penalties by Hillside for electrical code violations could have been rendered (see *Indian Valley Golf Club, Inc. v. Liquor Control Com.* (1973), 12 Ill. App. 3d 141, 297 N.E.2d 763); but, Hillside was not a party and the question remains whether defendants could have been granted effectual relief upon a finding that the ordinance was unenforceable. Defendant's position is that because a determination of the invalidity of the ordinance renders it void for all purposes (*Village of River Forest v. Midwest Bank & Trust Co.* (1973), 12 Ill. App. 3d 136, 297 N.E.2d 775), they were relieved *ab initio* of the duty to plaintiff to include within their plans and specifications the encasement of telephone wiring in conduit or cable. We cannot agree and believe that defendants' reliance upon *Village of River Forest v. Midwest Bank & Trust Co.* is misplaced, as it was concerned only with the municipality's power to enforce the ordinance in question against alleged violators.

■■■ In actions involving the rights of private parties, the subsequent declaration of the unenforceability of an ordinance cannot alter the fact that the ordinance did give notice of its standards at the time the conduct in question occurred. (*Cox v. Supreme Savings & Loan Association* (1970), 126 Ill. App. 2d 293, 262 N.E.2d 74.) Moreover, equitable principles may require that the standards so expressed remain in effect as operative facts which define the relationship and/or duties of private parties. (*NLRB v. Rockaway News Supply Co.* (1953), 345 U.S. 71, 97 L.Ed. 832, 73 S. Ct. 519; *Midway Tobacco Co. v. Mahin* (1976), 42 Ill. App. 3d 797, 356 N.E.2d 909.) Architects and engineers represent themselves to be competent in the preparation of plans and specifications necessary to the construction of suitable structures, including but not limited to the knowledge of and compliance with applicable building codes, and where they fail to use reasonable care to produce a satisfactory structure in compliance therewith, they may be sued for breach of an implied contract term or for negligence. *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51.

Here, by way of admissions made during oral argument in this court and in documents contained in the record, defendants acknowledged their duty to conform their plans and specifications to applicable building

codes. In an apparent attempt to comply with this duty, they made a determination that the applicable building code of Hillside was the BOAC and, because it provided for the adoption of the NEC as the applicable electrical code, defendants maintained throughout the period of tray installation that they were complying with the applicable code. Bishop, to the contrary, expressed the opinion that the BOAC provided for the adoption of the NEC only as an alternative and that Hillside had actually adopted the electrical code of Chicago—knowledge of which he imparted to C-R prior to the installation of the trays. In any event, from the record before us, it appears that the requirements of each code are substantially the same in that neither provides for the use of trays.

■■ Whether or not the ordinance in question was enforceable, it put defendants on notice of Hillside's wiring standards at the time the plans and specifications were prepared. (*Cox v. Supreme Savings & Loan Association.*) When this is considered with the fact that the electrical code (NEC) which defendants contend was applicable gave notice of the same standards and provided the same requirements in defining the duty of defendants—as did the Chicago code, we believe that it would be inequitable to apply a determination of the invalidity of the ordinance (especially upon the technical grounds urged) in a manner which would foreclose inquiry into the question of the standard of care employed by defendants in ascertaining the applicable electrical code and their compliance therewith. *NLRB v. Rockaway News Supply Co.; Midway Tobacco Co. v. Mahin.*

Consequently, upon the record before the trial court, we view its consideration of the validity of the ordinance and its rendition of an ultimate decision upon the issue to be erroneous.

■■ Plaintiff next contends that the trial court erred in granting summary judgment in favor of both defendants. We agree. Summary judgment should be granted only where no question of material fact exists and the movant is entitled to judgment as a matter of law. (*Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 340 N.E.2d 539.) "The right to summary judgment must be clear beyond question [citation], and when making this determination, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. [Citation.]" *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 920, 329 N.E.2d 543, 546, *aff'd* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.

Here, the threshold issue presented by the counts sounding in contract and negligence is whether defendants exercised their professional skill with reasonable care in conforming their plans and specifications to the applicable codes. (*St. Joseph Hospital v. Corbetta Construction Co.*) Defendants admit they had a duty to prepare drawings and specifications

in compliance with applicable codes, and they also agree that it is the code of Hillside which is applicable. Although there is a disagreement between the parties as to whether the Chicago code or the NEC is that code, the record demonstrates that the question is academic because both codes require the encasement of wiring in conduit or cable rather than exposure in trays when run through plenum chambers.

Even viewing the record in a manner most favorable to defendants, which we are not required to do (*Baier v. State Farm Insurance Co.*), a disputed question of material fact regarding defendants' compliance with the NEC arises from the conflict in the testimony of Bishop and Cartland. Bishop's opinion is that any wire carrying a voltage in excess of 70 volts must be treated as a high voltage line or fire safety will be compromised, and that the wiring of telephone lines with a voltage of 90 volts when ringing must, under either the NEC or the Chicago code, be fully encased in cable or conduit if run through plenum chambers. Cartland, of C-R, is of the opinion that telephone wiring is analogous to data processing systems wiring and therefore should be governed by the NEC exception concerning such wiring, which he asserts allows the use of trays. The record before the trial court, even assuming the applicability of the NEC, as defendants contend, raises a question of material fact regarding the degree of care exercised by them in compliance with it.

Nonetheless, defendants argue that any question concerning a breach of duty on their part is immaterial, as the only injury visited upon plaintiff was caused by itself. Their position is that as long as plaintiff could not be forced by the imposition of penalties to alter the wiring system designed by them, no injury could result from a breach of contract by Stade or by the negligence of either of them. We must disagree.

First, Bishop's testimony that the exposed wiring of telephone lines through plenum chambers created a fire risk within the structure is uncontradicted. Thus, on the record before us there is evidence that the building's value may have been diminished as a result of the plans and specifications prepared by defendants which provided for this mode of wiring, and a question of fact remains as to the amount of recoverable damages should plaintiff establish a breach of duty by defendants.

■■ Second, defendants, as previously noted, have never contended that the municipality lacked the authority to enact an ordinance requiring encased wiring in plenum chambers, and their only challenge has been that the enactment procedure followed by Hillside was improper. Because a municipality may enact ordinances with retroactive application to correct fire hazards in existing buildings where the public interest in the conformance of these structures to certain fire safety levels outweighs the expense suffered by the property owners (*Kaukas v. City of Chicago* (1963), 27 Ill. 2d 197, 188 N.E.2d 700, *appeal dismissed* (1963), 375 U.S. 8,

11 L.Ed.2d 40, 84 S. Ct. 67), a successful challenge of the ordinance on the technical ground urged by defendants would have placed plaintiff in the precarious position of awaiting the time when Hillside might reenact the ordinance with retroactive application to its structure. We believe that plaintiff would be likely to be subjected to such a reenactment, as the existing ordinance gave notice of Hillside's wiring standards irrespective of whether it was then enforceable. (*Cox v. Supreme Savings & Loan Association.*) Consequently, even assuming that the ordinance had been unenforceable at the time of installation or alteration, the threat of future enforcement raises a question of resulting damage to plaintiff from defendants' breach of duty, if established.

Therefore, as questions of material fact existed, the entry of summary judgment in favor of both defendants was erroneous. Because of the views stated in this opinion, we find it unnecessary to discuss plaintiff's third contention.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.